PEOPLE, PLAINTIFF AND APPELLEE, *v.* HEIRS OF VALDÉS, DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of San Juan in an Action for the Annulment of Dominion Title, Etc.

No. 2222.—Decided November 28, 1922.

EJECTMENT—PLEADING—CONCLUSIONS OF LAW—TECHNICAL DEFECTS.—If over-ruling a motion to strike out from the complaint matters which involve con-clusions of law is an error, it is not sufficient ground for a reversal when such defects are merely technical.

ID.—ID.—AMENDMENTS—DISCRETION OF COURT.—Refusal by the court to al-low the filing of an amended answer at the beginning of the trial is not a ground for reversal in the absence of proof of an abuse of discretion.

ID.—ID.—EVIDENCE—OBJECTION.—Appellate courts will not give serious consid-eration to alleged errors in the admission of evidence when its admission was not objected to during the trial.

ID. — ID. — ID. — VARIANCE. — Appellate courts have been liberal in permitting amendments to pleadings, or considering the amendments as made in aid of the judgment, when the amendment is such that it should have been al-lowed by the court below when moved for and substantial justice would be

promoted thereby. In these circumstances it has been held generally that the judgment will not be reversed on account of defects or omissions in the pleadings which are corrected by the evidence or the pleadings of the adverse party, or on account of variance between the pleadings and the evidence, if the sufficiency of the pleadings was not duly challenged in the court below, or if the evidence was admitted without objection, or it appears clearly that the defect or variance did not affect the substantial rights of the parties, but the amendment will be considered as having been made.

ID.—POSSESSION—TITLE.—The legal principle that when an action of ejectment is brought against persons who are in possession of the property in controversy by virtue of a title which was thought to be valid it is necessary first to pray for the annulment of the title, applies only when the action arises from such nullity, but not when the right to bring an action of ejectment is an independent right.

The facts are stated in the opinion.

*Messrs. Feliú & Alemañy* for the appellants.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellants, defendants below in a revendicatory action, insist that the court below erred:

"1. In overruling defendant-appellant's motion to strike Paragraph VII from the complaint.

"2. In overruling defendant-appellant's demurrer that the complaint did not state facts sufficient to constitute a cause of action.

"3. In overruling the motion made by defendant-appellant at the trial for leave to file an amended answer which was attached to said motion.

"4. In admitting in evidence, considering and giving weight in deciding the case to the copy of the document marked plaintiff's exhibit 'B' and purporting to embody a franchise or concession made by the Spanish Government to defendant's ancestor for the laying of a steam railway line fron Cataño to Bayamón.

"5. In admitting as plaintiff's evidence, considering and giving weight in deciding the case to the copy of a document marked plaintiff's exhibit 'C' and purporting to embody the project of a dock to be constructed for the service of the railway between Cataño and Bayamón.

"6. In admitting as plaintiff's evidence, considering and giving weight in deciding the case to the document marked plaintiff's exhibit 'D' and purporting to form part of a plan of the Cataño territory, and said to contain a sketch of the lands in controversy.

"7. In admitting as plaintiff's evidence, considering and giving

weight in deciding the case to the document marked plaintiff's exhibit 'E' and purporting to contain the original record and plan in connection with a certain petition of defendant's ancestor praying for a grant of swamp lands in Cataño.

"8. In admitting as plaintiff's evidence, considering and giving weight in deciding the case to the document marked plaintiff's exhibit 'F' and purporting to contain a certified copy of the petition said to have been made by defendant's ancestor to the commission created by the Legislature by Act No. 39 of 1910 in connection with certain Cataño lands, and the order ruling thereon.

"9. In admitting, considering and giving weight in deciding the case to the document marked plaintiff's exhibit 'G' purporting to be an original record containing a grant made by the Military Government in 1900 to defendant's ancestor to construct a wharf and lay a track in Cataño and a plan of such undertaking.

"10. In admitting as plaintiff's evidence, considering and giving weight in deciding the case to the document marked plaintiff's exhibit 'H' and purporting to be General Order No. 97 of July 7, 1903, promulgating an executive order of the President of the United States in connection with the Federal Reservation of certain lands.

"11. In admitting as plaintiff's evidence, considering and giving weight in deciding this case to the testimony of witness Manuel Carmona.

"12. In admitting as plaintiff's evidence, considering and giving weight in deciding this case to the testimony of witness Rafael Carmona.

"13. In overruling defendant's motion for nonsuit after plaintiff rested his case.

"14. In refusing to allow defendant's witness Rafael del Valle Zeno to answer questions put by the defendant in regard to the identity of the property described in the complaint and of that described in the document (plan) marked plaintiff's exhibit 'D'.

"15. In failing to give weight to the document marked defendant's exhibit No. 1, which is an authentic copy of the order establishing the right of defendant's ancestor to the ownership of a property of 5,485.61 square meters of land in Cataño, Municipality of Bayamón, P. R., recorded in the registry of property.

"16. In failing to give weight to the testimony of defendant's witness Rafael del Valle Zeno.

"17. In finding, upon entering the judgment appealed from,

that plaintiff is the owner of the property described in the complaint or that 'it belongs to him in fee simple.'

"18. In finding, upon entering the judgment appealed from, that defendant is in possession of the same property that is claimed in the complaint.

"19. In finding, upon entering the judgment appealed from, that the property claimed is the same property that is in defendant's possession.

"20. In finding, upon entering the judgment appealed from, that the dominion title proceedings whereunder the title of defendant's ancestor, and now defendant's, to the property referred to in defendant's exhibit No. 1, was established, were null and void.

"21. In holding and concluding, upon entering the said judgment, that the said proceedings, the order rendered therein, and the record thereof in the registry are all null and void.

"22. In entering judgment in favor of the plaintiff.

"23. In adjudging the defendant to pay the costs of this action."

The first assignment is not discussed as a separate and distinct proposition in the brief. But appellants, after some argument of the question as involved in the second assignment, that is, as amounting to a failure to state facts sufficient to constitute a cause of action, are content to refer to and adopt the same reasoning in support of such first assignment.

The complaint alleges in substance, among other things, that The People of Porto Rico is the owner in fee of the property described therein; that the parcel of land so described, until 1898, belonged to and was the property of the Crown of Spain and was, therefore, considered to be the property of the State and that upon the making of the Treaty of Peace between the Crown of Spain and the United States on December 10th, 1898, the Island of Porto Rico, including all lands belonging to the Crown of Spain, was ceded by the Spanish Government to that of the United States; that the President of the United States, duly authorized by an Act of Congress approved March 4th, 1907, renounced in favor of The People of Porto Rico, by presidential procla-

mations of various dates, all the lands belonging to the
Federal Government and not reserved by it, and as the parcel
involved was not reserved by the Federal Government under
any proclamation or law, the same became and is the property
of plaintiff; that in 1901 Ramón Valdés Cobián instituted
proceedings for dominion title before the District Court of
San Juan alleging himself to be the owner of the said parcel
of real estate in part by purchase from Juan Carmona and
in part by concession from the Spanish Government; that
the court held such ownership to have been established and
the property was recorded in the Registry of Property of
San Juan; that first Ramón Valdés Cobián, to the injury
of the plaintiff, was in possession of the said property, and
from the date of the decease of the said Valdés defendants,
his successors, have been and are in possession of the prop-
erty, likewise to the prejudice of plaintiff; that the said
parcel of land has been and is the property of plaintiff
and neither Ramón Valdés formerly, nor his successors to-
day, have had or have any right thereto, and that the suc-
cession of the said Ramón Valdés is illegally in the posses-
sion of the said property.

The prayer is for judgment to the effect that the land in
question belongs in fee to The People of Porto Rico, together
with the consequent provision for delivery, for cancellation
of the entry in the registry of property and a pronounce-
ment awarding the costs to plaintiff.

By article 8 of the Treaty of Peace above mentioned Spain
ceded to the United States all immovable property in Porto
Rico, which in conformity with law belonged to the public
domain and as such belonged to the Crown of Spain.

The first criticism is that the complaint does not charge
that the land described therein belongs to the public domain
and as such to the Spanish Crown. This is followed by a
stricture upon the use of the words "Federal Government"
where the term "United States" might have served more

accurately to convey the exact meaning. Again appellants point to the inadequacy of the averment "that neither Ramón Valdés formerly nor his succession now have had or have any right to the said property and that the succession of the said Ramón Valdés is illegally in the possession thereof," as an equivalent to the statement that defendants have no title. This contention is then reinforced by the further suggestion that the alleged illegality of the possession referred to is a mere conclusion of law, and in conclusion upon this phase of the case it is urged that plaintiff does not charge bad faith nor allege previous annulment of the decree of dominion title obtained by Valdés in 1901.

The Act establishing the Supreme Court of Porto Rico as a court of appeals, approved March 12th, 1903, ordains that this court "shall not be confined to the errors in procedure or of law only, as they are pointed out, alleged, or saved, by the respective parties to the suit, or as set forth in their briefs and exceptions, but in furtherance of justice the court may also take cognizance of all the facts and proceedings in the case as they appear in the record and likewise consider the merits thereof so as to promote justice and right and to prevent injustice and delay."

And our Code of Civil Procedure contains the following provisions:

"Sec. 122. In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties.

"Sec. 142. The court must, in every state of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

The error, if any, in overruling the motion to strike and the demurrer was technical and harmless. The complaint can hardly be commended as a model of good pleading, but at the present stage of the proceeding we are not disposed

to scrutinize a more or less reprehensible laxity in diction or inaccuracy in the choice of words, nor as the result of such strict construction to reverse the judgment of the district court by reason of any mere technical defect or omission in the complaint.

The motion to strike a conclusion of law was filed in May, 1914, and overruled in the same month of 1916. Then a demurrer was filed on May 18th and overruled on June 30th of the year last mentioned. An answer was filed on July 11, 1916.

Defendants did not appear at the trial in March, 1918, but after the evidence for plaintiff was in and the case had been closed and submitted for decision asked that the same be reopened and that they be permitted to introduce their evidence. This motion was granted.

On April 4th, the day set for the presentation of the evidence for the defense, defendants applied for leave to file an amended answer. Counsel made no explanation or excuse for failure to amend the answer before the trial. The application was based upon the two laconic grounds that the original answer was not verified as it should have been and that the other proposed amendments were not calculated to surprise the plaintiff. The record leaves little or no doubt that the amendment as to verification would have been allowed had the question not been complicated by the averment of new matter and "additional defenses." After refusal to admit the amended answer counsel did not even intimate that defendants might be permitted to swear to the original answer, a suggestion which we have no reason to assume would not have found favor with the court. The brief for appellants does not establish the proposition that the "additional defenses" of estoppel and prescription could have prospered in any event upon full proof of all facts alleged in support thereof. Nor, on the other hand, does it appear that defendants were not permitted to prove under

the original answer all that they might have shown under the more elaborate averments of the proposed substitute. In any event, we find no abuse of discretion in refusing to permit the filing of the amended answer.

To say that the testimony and documentary evidence mentioned in assignments 4 to 12, inclusive, were introduced without objection or exception would no doubt be a sufficient answer to the contention of appellants as to the admissibility of such evidence. In so far as the documents in question are concerned, however, much of what was said in *People of Porto Rico* v. *Zamorano,* 28 P. R. R. 675, would be more or less applicable, *mutatis mutandis,* to the case at bar. The only argument in support of the eleventh and twelfth assignments is that Manuel Carmona, without first qualifying as an expert, was permitted to refer to a plan exhibited by counsel for plaintiff; that the questions put to this witness were leading in form, and that the testimony of Rafael Carmona consisted of conclusions drawn by him rather than statements of fact. Obviously, in the absence of timely objection below, such suggestions do not demand serious consideration by an appellate court.

The record recites that the motion for nonsuit was based upon the following grounds: Failure on the part of the plaintiff to prove the material facts set out in the complaint; failure to identify the property claimed; failure to establish plaintiff's title to the property sought to be recovered; lack of sufficient facts in the complaint to constitute a cause of action.

Most of the argument under the thirteenth assignment proceeds upon the theory of a fatal variance between the averment *supra* as to transfer of title from the United States to Porto Rico, through presidential proclamations authorized by an Act of Congress approved in March, 1907, and the date and method of acquisition shown by the evidence pointing to an Act of July 1, 1902, authorizing the President to

make within one year from the date last mentioned such reservations as he might deem necessary out of the public lands in this Island acquired from Spain as aforesaid and granting all such lands not so reserved to the Government of Porto Rico. The brief for the Government does not touch upon the matter of variance at all nor undertake to answer the direct challenge as to the sufficiency of the proof as to this link in plaintiff's chain of title, although much stress is laid upon this aspect of the case in the brief for appellant, and the question so raised can hardly be ignored as too frivolous to receive even casual notice. See, for instance, *Johnson* v. *Robinson Consol. Min. Co.* 5 L. R. A. 769; *Equitable Accident Ins. Co.* v. *Osborn,* 13 L. R. A., 267. Indeed, but for the somewhat inadequate basis for the claim of surprise and prejudice now urged upon our attention, perhaps a reversal and judgment for nonsuit would be the only logical outcome of the situation so created.

The argument for appellant here is to some extent a repetition of that made under the tenth assignment, *supra.* The document there referred to is a printed pamphlet entitled "General Orders No. 97, Headquarters of the Army, Adjutant General's Office, Washington, July 7, 1903." Embodied therein is an executive order purporting to have emanated from the White House, quoting from the Act of July 1, 1902, above mentioned, making certain reservations of land for military purposes and concluding thus: "Given under may hand this thirtieth day of June, 1903. Theodore Roosevelt. By the President; Elihu Root, Secretary of War."

*Burke* v. *Miltenberger,* 19 Wall. 519, is cited in support of the contention that a court cannot take judicial notice of a military order. The general order in that case *"was said by the counsel of Burke"* to have been issued "by Major-General Banks, commanding the headquarters of the Gulf." The order there referred to was "set out at length in the

brief of counsel." Beyond this "nothing on this matter, however, appeared in the record, and there was nothing to show that this order had been brought to the attention of any court below." Speaking of the contention as to the effect of such supposed order the Supreme Court said:

"The answer to this proposition is that, in the state of the pleadings and evidence, we are not at liberty to pass upon the legality of this order, or to determine what effect should be given to it if properly issued. It is not in the record at all, and for aught that appears, was never brought to the notice of either of the courts in Louisiana engaged in the decision of the case. It may be that the courts of the country would take judicial notice that Louisiana, at the time mentioned, was in the military occupation of our forces, under General Banks, but we know of no rule of law or practice requiring this, or any other court, to take notice of the various orders issued by a military commander in the exercise of the authority conferred upon him."

In the case at bar the introduction of the general order, regardless of its probative value, at least sufficed to call the attention of the court below to the possible, not to say probable, existence of the executive order relied upon and to suggest the further probability of other reservations made within the year following the enactment in question. At page 526 of Senate document No.——, Government Printing Office, 1914, the same being Vol. 6 of a series of compilations of data relating to non-contiguous territory, etc., prepared by the Bureau of Insular Affairs, War Department, we find listed "Executive Order, June the 30th, 1903, making reservations of public lands and buildings in Porto Rico" and for the full text a reference to "G. O. No. 91, A. G. O. July 7, 1903." The same series of Senate documents contains the full text of presidential proclamations making other reservations for different purposes of which heretofore we have taken judicial notice. *People* v. *Dimas,* 18 P. R. R. 1019; *People* v. *Municipality of San Juan,* 19 P. R. R. 625. Indeed, these matters are so well understood

locally that in the earlier of the two cases last mentioned the trial judge seems to have regarded the facts as notorious events of current history. No doubt they were equally well known to the court below and to counsel for defendants in the instant case. An authentic copy of the executive order in question herein might have been obtained if deemed necessary by the court below without the necessity of formal introduction as evidence. But however this may be, defendants failed to improve the opportunity which was open to them of appearing at the trial and objecting to the admission of the general order, in which event plaintiff might have produced a certified copy thereof, or of the executive order itself if not available as a public document published by legislative authority. In the circumstances we need not dwell upon the question of judicial notice.

We may refer in passing, however, to *Central of Georgia Ry. Co.* v. *Gwynes,* 113 S. E. 183, as a recent decision pointing to the wisdom of caution in expanding the doctrine of any particular case without regard to the facts.

*Elmore* v. *Elmore,* 140 Cal. 516, is cited to show that the question of variance may be raised by a motion for nonsuit. In that case "the cause of action, if any, established by the findings" was "wholly different from the one averred in the complaint." The court below had rendered judgment "upon a cause of action not set up in the complaint, and not warranted by the averments of the complaint." Again, "by the motion for nonsuit the appellant distinctly raised the point insisted on" in the appellate court "and thereby called the attention of both the court below and counsel to it" and therefore was held to be not within the rule that a party will not be allowed to raise an objection for the first time on appeal.

The statement in the motion for nonsuit that "the essential facts of the complaint" were not proven and that "plaintiff's title to the property claimed" was not es-

tablished does not necessarily raise the question of variance. In so far as the point now under consideration is concerned the essential fact was the ownership, or at most a title, derived from the United States. The manner in which the formalities of transfer were carried out and the exact date or dates involved are minor details that might or might not have misled defendants, but can hardly be regarded as constituting a new cause of action. In so far as disclosed by the motion for nonsuit the alleged failure of proof might have related exclusively to the identification of the property either as the parcel in controversy or as included among the lands that passed to the United States under the treaty.

The statement on appeal contains the information that the motion for nonsuit was denied by the court for reasons stated in writing and that this document would be transcribed as a part of the record on appeal. This does not seem to have been done and there is nothing whatever to show that upon argument of the motion for nonsuit or at any other time defendants called the attention of the court or of counsel for plaintiff to the question of variance now urged upon our consideration.

We are loath to believe that so palpable a blunder in pleading, if properly challenged below, would not have been promptly corrected by an amendment to conform to the evidence.

"The appellate courts have been liberal in allowing an amendment of the pleadings or in regarding the amendment as made, to support the judgment, where the amendment is of such a nature that it should have been allowed by the lower court upon request, and substantial justice would be promoted by such procedure. Under these circumstances, it is held generally that the judgment will not be reversed because of defects or omissions in the pleadings which are supplied by the proof or the pleadings of the adverse party, or because of a variance between the pleadings and the proof, if the sufficiency of the pleadings was not properly challenged in

the lower court, or the evidence was introduced without objection, or the defect or variance appears clearly not to have affected the substantial rights of the parties; but   *   *   *   the amendment will be deemed made." Note to *Ellinghouse* v. *Ajax Live Stock Co.*, L. R. A. 1916 D, page 841, at page 843.

Without going into unnecessary details we need only add that the land in controversy was identified with reasonable certainty and plaintiff's title thereto was satisfactorily established in so far as any point specifically raised herein is concerned. We do not feel constrained to speculate upon matters not discussed in the course of the eighty-three page brief for appellants.

The witness Rafael del Valle Zeno was shown a plan which had been introduced by plaintiff and was asked to compare the same with the description of the land in controversy contained in the complaint and to state whether or not the property indicated by the plan was identical with that described in the complaint. Upon objection the court ruled that this was not the proper way to show this fact and counsel for defendants noted an exception without mention of any reason whatever therefor. Counsel were then permitted to examine this witness in detail in regard to the alleged defects in the plan and to establish whatever basis existed in fact for the alleged discrepancy. Even the brief on appeal does not indicate what the difference, if any, between the two descriptions is and no authority is cited in support of the fourteenth assignment. If the information thus sought to be elicited be not a matter which, upon disclosure of the data upon which an opinion might be based, the court itself was quite as competent to determine as any surveyor would be, at least no prejudice is shown.

We may regard the remaining assignments, except to some extent perhaps the twenty-third, as different aspects of the twenty-second. Indeed, most if not all of the questions involved are discussed in the brief for appellants under

the general proposition that the judgment appealed from "is contrary to the law and the evidence."

Here again much is said about the failure to allege defects in the dominion title of defendants or to pray that the same be annulled, and the pronouncement in the judgment declaring the same to be void is assailed as in excess of the relief demanded, citing *Sache* v. *Gallette,* 11 L. R. A. (N. S.) 803; *Reynolds* v. *Stockton,* 140 U. S. 254, and *Belford* v. *Woodward,* 29 L. R. A. 593.

"The legal principle that when an action of ejectment is brought against persons in possession of the thing in controversy on the strength of a title which was thought to be valid, it is necessary that the nullity of this title be first asked for, is applicable only when the action arises from such nullity, but not when the right to bring an action of ejectment is independent thereof. (Opinions of the Supreme Court of Spain of October 16, 1873, January 17, 1889, April 6, 1889, and February 13, 1892)." *People* v. *Dimas, supra.*

But appellants say: We derive title by purchase from Juan Carmona and plaintiff has not proved that Carmona acquired the property so transferred by him in the same way that Calvo Hermida and María F. Ríos obtained possession of the lands involved in the *Dimas Case.* Aside from the fact that two sons of Carmona testified that the small bit of land sold by their father to Valdés had been reclaimed from the sea, the evidence as a whole shows beyond any reasonable doubt that the land in controversy was originally part of a mangrove swamp and that this fact was well known to and recognized by Ramón Valdés, both before and long after his alleged purchase from Carmona. This being true, the transfer, if any, by Carmona could create no color of title. *People* v. *Zamorano, supra.* See also *Doolan* v. *Carr,* 125 U. S. 618. In the circumstances we need not discuss the question of good faith to which several pages of appellant's brief are devoted.

The theory of the complaint evidently was that the land in controversy having been a part of the public domain at the time Valdés obtained his so-called dominion title, the decree of ownership was an absolute nullity. Perhaps plaintiff should have alleged knowledge of the facts by Valdés, but that omission was supplied by the evidence introduced without objection on the part of defendant. The averment of a conclusion drawn from the facts stated would have added nothing to the strength of such facts as indicating the absolute nullity of defendant's title. The prayer for cancellation of the entries in the registry of property obviously contemplates that the court might treat the decree of dominion title as non-existent without express pronouncement in this regard. In any event, inasmuch as defendants appeared in the court below, obtained a reopening of the case and introduced all their evidence including the decree of dominion title, the authorities holding that a default judgment in excess of the remedy invoked is void for want of jurisdiction are not in point.

All things considered, we are unable to say that the court below abused its discretion either in the weighing of the evidence or in the award of costs, and the judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justice Aldrey concurred. Mr. Justice Wolf concurred in the judgment.

CONCURRING OPINION OF MR. JUSTICE WOLF.

I am in accord with the main aspects of the foregoing opinion as well as its reasoning. It merely seemed to me that the question of the failure of proof or variance was sufficiently covered by sections 136, 137 and 138 of the Code of Civil Procedure, as follows:

"Sec. 136.—No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled

the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that the party has been so·misled, the court may order the pleading to be amended, upon such terms as may be just.

"Sec. 137.—When the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs.

"Sec. 138.—Where, however, the allegation of the claim or defense, to which the proof is directed, is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance, within the last two sections, but a failure of proof."

Hence it was unnecessary either to cite or rely on the general jurisprudence of states other than California, as illustrated by the·note to *Ellinghouse* v. *Ajax Live Stock Co.,* L. R. A. 1916 D, 843, transcribed in the majority opinion. The doctrine cited may or may not be more extensive than the Code provisions, but my concurrence is based on the sufficiency of the code provisions to cover the question before us.