## BURKE *v.* MILTENBERGER.

1. The Provisional Court of Louisiana, established by President Lincoln on the 20th of October, 1862, did not cease to exist until July 28th, 1866, when Congress by statute of that day provided for the transfer of cases pending in it, and of its judgments and decrees, to the proper courts of the United States.
2. This court does not take judicial notice of the various orders issued by a military commander in the exercise of the military authority conferred upon him.

ERROR to the Supreme Court of Louisiana; the case being thus:

During the recent rebellion, which broke out in the spring of 1861, the State of Louisiana having involved herself in it, the courts of the United States, in the year just named, were excluded from her limits. On the 1st of May, 1862, however, the government troops had captured and occupied the city of New Orleans, and held military possession of it and of certain small parts of the State which had submitted themselves to the lawful authority. But everything was unsettled and insecure. In this condition of things, President Lincoln, on the 20th of October, 1862, issued an executive order, establishing a Provisional Court in Louisiana. It ran thus:

"The insurrection which has for some time prevailed in several of the States of this Union, including Louisiana, having temporarily subverted and swept away the civil institutions of that State, including the judiciary and the judicial authorities of the Union, so that it has become necessary to hold the State in military occupation; and it being indispensably necessary that there shall be some judicial tribunal existing there capable of administering justice, I have, therefore, thought it proper to appoint, and I do hereby constitute a Provisional Court, which shall be a court of record for the State of Louisiana, and I do hereby appoint Charles A. Peabody, of New York, to be a provisional judge to hold said court, with authority to hear, try, and determine, all causes, civil and criminal, including causes in law, equity, revenue, and admiralty, and particularly all such

powers and jurisdiction as belong to the District and Circuit Courts of the United States, conforming his proceedings, so far as possible, to the course of proceedings and practice which has been customary in the courts of the United States and Louisiana; his judgment to be final and conclusive. And I do hereby authorize and empower the said judge to make and establish such rules and regulations as may be necessary for the exercise of his jurisdiction, and to appoint a prosecuting attorney, marshal, and clerk of the said court, who shall perform the functions of attorney, marshal, and clerk, according to such proceedings and practice as before mentioned, and such rules and regulations as may be made and established by said judge. These appointments are to continue during the pleasure of the President, *not extending beyond the military occupation of the city of New Orleans, or the restoration of the civil authority in that city and in the State of Louisiana.* A copy of this order, certified by the Secretary of War, and delivered to such judge, shall be deemed and held to be a sufficient commission. Let the seal of the United States be hereunto affixed."

This court having been thus established, one Miltenberger sued a certain Tregre in it, and on the 26th of April, 1865, got judgment against him. On execution issued on the judgment, a plantation near New Orleans, belonging to Tregre, was seized and on the 3d of June, 1865, sold by the marshal of the court. The *fi. fa.* was regular, apparently, in form. The plantation was bought in by Miltenberger, who took and kept possession of it.

Subsequently to this, one Burke having got judgment against this same Tregre, was about to sell the plantation as if still owned by Tregre. Miltenberger intervened, claiming the plantation as owner under the sale to him, already mentioned, as made on the 3d of June, 1865. And the question was whether that sale was valid or void. Tregre asserted that it was void, because by the terms of the executive order constituting the Provisional Court, the appointment of the judge and of the officers, in other words, the existence of the court was not to extend "beyond the military occupation of the city of New Orleans, or the restoration of the civil authority in that city and in the State of Lou-

isiana;" which military occupation, he alleged, had ceased before the sale was made, or even the judgment signed; civil authority being then restored, as he alleged, in the State and city. The Provisional Court itself having been declared by this tribunal to have been constitutionally established,* the matter to be now settled was when did the authority of the court end? or rather, had it ended on the 3d of June, 1865, when the plantation which Burke sought to charge as against Miltenberger was sold by the person assuming to act as marshal of the court?

This, to some extent, was a matter of historical fact. The order of events seemed thus:

1862. May 1. The military occupation of New Orleans, already spoken of as having been first made on this day, continued uninterrupted.

1863. The District Court of the United States was reorganized and a judge appointed.

1864. July. The loyal people of the State, assuming to be its true population, met in convention and adopted a constitution in harmony with the supremacy of the Union, and with lawful government.

1864. A legislature under this constitution was elected and soon after assembled and passed laws; one of its acts being a ratification of the thirteenth amendment. Other acts reorganized the Supreme and District Courts of the State.

[These political acts of the State, however, were accomplished by but a comparatively small part of the actual population of the State; and in the presence of the superior military forces of the government.]

1865. April 9. The rebel Lee surrendered.

1865. May. The cases reported in Seventeenth Annual Reports begin.

1865. May 10. The President proclaimed† that the insurrection in the several States "may be regarded as virtually at an end."

---

* The Grapeshot, 9 Wallace, 130.    † 13 Stat. at Large, 757.

1865. May 17. *As was said by the counsel of Burke.* Major-General Banks, commanding the headquarters of the Gulf, issued a general order thus, suspending the collection of claims upon plantation property:

"To secure the payment of wages and other expenses incident to the cultivation of the soil, the sale of the property used for this purpose, on execution or other process of law, *is hereby prohibited and suspended until the 1st day of February,* 1866. The intention of this order being not to prejudice just claims, but to suspend their collection until the crops of the year can be matured."

Nothing on this matter, however, appeared in the record, and there was nothing to show that this order had been brought to the attention of any court below.

1865. May 26. The rebel Johnston surrendered.

1865. May 26. Kirby Smith, the last of the rebel leaders, surrendered in Texas.

1865. June 3. The sale in dispute was made; the city of New Orleans being still and for some time afterwards occupied by the troops of the United States.

1866. April 2. In the case of *The Protector,*\* where a motion was made to dismiss a writ of error on the ground that more than five years had elapsed between the date of the decree appealed from and the filing of the appeal, allowing the suspension of time produced by the war, this court held that in certain States, including Louisiana, the war was to be taken to have ended when the President proclaimed it ended, which in those States was the day just mentioned, April 2d, 1866. And in *Adger* v. *Alston,*† the same date was fixed on a plea of the statute of limitations on a bond.

1866. July 28. Congress passed an act‡ by which all pending suits in the Provisional Courts were directed to be transferred to the Circuit and District Courts of the United States, to be proceeded with as if originally commenced therein.

The court below sustained the validity of the sale, and Burke appealed.

---

\* 12 Wallace, 700.　　† 15 Id. 560.　　‡ 14 Stat. at Large, 344.

*Mr. P. Phillips, with whom was Mr. J. B. Beckwith, for the appellant:*

I. The Provisional Court was a court engendered of revolution and war. It was constituted in the face of the words of the Constitution. Every intendment against its acts performed in a time when revolution was no longer going on, and when war had completely ceased is to be made. The constitutionality of the court was indeed settled in *The Grapeshot;* but that was its constitutionality within the exact limits mentioned.

Now, on the 3d of June, 1865, when this sale was made, every general of the Confederate forces had surrendered; the forces themselves were dispersed and wandering to their homes or fleeing to foreign lands. The war had been officially proclaimed to be "virtually ended." The court, therefore, had expired, and its judge, prosecuting attorney, marshal, and clerk, were in the *status* of unofficial life. The fact that the government troops remained in New Orleans and feebly imitated military occupation, does not greatly help the opposing case. The troops had to be somewhere, and there had to be a commander over them.

II. But if the sale is defended on the grounds of a military occupation of the city, the answer is that the order of General Banks of May 17th, 1865, made the sale unlawful. It was a military order, in full force, known to the officers of the Provisional Court. As was said in *Humphreys* v. *Browne:*[*]

"It was an injunction issued by competent and paramount authority, and did not authorize the sale to be made on the day which had been fixed. Whether the cause was sufficient or insufficient, the order had the effect of staying all proceedings."

In any view, therefore, the sale was void. If the civil authority had, on the 3d of June, 1865, superseded military rule, then the Provisional Court had ceased to exist by the terms of the organizing act. If, on the contrary, military rule still existed on that date, then the order of General Banks was obligatory.

[*] 19 Louisiana Annual, 158.

The act of Congress of July 28th, it may be added, did not give validity to any judgment or pending proceeding in the Provisional Court. It simply directs their transfer to tribunals unquestionably lawful.

*Mr. T. J. Durant, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

The only question in this case for our consideration is, whether the Provisional Court of Louisiana, established by the President on the 20th of October, 1862, had ceased to exist, by the terms of the order creating it, on the 3d day of June, 1865, when the plantation in dispute was sold by the marshal of that court, on a *fi. fa.* regularly issued, and purchased by Miltenberger, who took immediate possession of it, and has remained in possession ever since.

The institution of this court was a necessity, on account of the disturbed state of affairs in Louisiana, caused by the civil war, and the authority of the President to establish it was sustained in the case of *The Grapeshot*, reported in 9th Wallace.\* The duration of the court was limited to the restoration of civil authority in the State, and it is insisted that this limitation expired when the last Confederate general, Kirby Smith, surrendered, which was on the 26th of May, 1865; but this position is inconsistent with the fact conceded on the argument, that military rule prevailed in the city of New Orleans, and the State of Louisiana, for a long time after this event, and after the sale in controversy was made. This in itself is conclusive proof that civil authority was not then restored, and that the Provisional Court was in the rightful exercise of its jurisdiction.

We do not care, however, to rest our decision on this ground alone, although it is sufficient to dispose of this case, as that court may have transacted business after the military occupation ceased, and it is important, therefore, to settle when its jurisdiction terminated.

---

\* Page 130.

It is very clear that the restoration of civil authority in any State could not take place until the close of the rebellion in that State; and the point of time at which this occurred has been the subject of consideration by this court in several cases involving the application of statutes of limitation.* The principle established by these cases is, as the war did not begin or close at the same time in all the States, that its commencement and termination in any State is to be determined by some public act of the political departments of the government. This action has fixed the 2d day of April, 1866, as the day in which the rebellion closed in all the States but Texas, and the 20th of August following, as the date of its entire suppression.

It does not, however, follow that the President's proclamation of April 2d, 1866, *ipso facto*, dissolved the Provisional Court of Louisiana, although it unquestionably authorized its dissolution. It is plain to be seen that its dissolution, without proper provision for the business before it, as well as that which had been disposed of, would have produced serious injury; and this state of things, requiring the action of Congress, was doubtless recognized by the President, as nothing is said in the proclamation about this court. If it was subject to be dissolved as soon as the proclamation appeared, and was no longer a court *de jure*, it still had a *de facto* existence until its actual dissolution. This took place on the 28th of July, 1866,† when Congress provided for the transfer of cases pending in that court, and of its judgments and decrees, to the proper courts of the United States. The power of Congress to do this was recognized in *The Grapeshot*, and, indeed, we do not see how it could be questioned, if, as we have decided, its establishment was a rightful exercise of the constitutional authority of the President, during a state of war.

It is contended by the plaintiff in error that an order of General Banks, in military command at New Orleans, during

---

* United States *v.* Anderson, 9 Wallace, 56; The Protector, 12 Id. 700; Adger *v.* Alston, 15 Id 560.

† 14 Stat. at Large, 344.

the period of this controversy, which is set out at length in the brief of counsel, operated as an injunction upon the proceedings of the marshal, and that, therefore, the sale of the plantation was unauthorized. The answer to this position is that, in the state of the pleadings and evidence, we are not at liberty to pass upon the legality of this order, or to determine what effect should be given to it if properly issued. It is not in the record at all, and for aught that appears, was never brought to the notice of either of the courts in Louisiana engaged in the decision of the case.

It may be that the courts of the country would take judicial notice that Louisiana, at the time mentioned, was in the military occupation of our forces, under General Banks, but we know of no rule of law or practice requiring this, or any other court, to take notice of the various orders issued by a military commander in the exercise of the authority conferred upon him.

JUDGMENT AFFIRMED.