EL PUEBLO, DEMANDANTE Y APELADO, v. SUCESIÓN VALDÉS,
DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre nulidad de título de dominio, etc.

No. 2222.—Resuelto en noviembre 28, 1922.

CONCLUSIONES DE LEY—DEFECTOS TÉCNICOS.—La desestimación de una moción para eliminar de la demanda términos que envuelven conclusiones de ley cuando tales defectos son meramente técnicos, de ser un error, no es motivo bastante para una revocación.

ENMIENDAS DURANTE EL JUICIO—DISCRECIÓN JUDICIAL.—La negativa de la corte a permitir la radicación en el momento del juicio, de una contestación enmendada, no es motivo de revocación en ausencia de prueba de abuso de discreción.

PRUEBAS NO OBJETADAS DURANTE EL JUICIO.—Las cortes de apelación no prestarán seria consideración a supuestos errores en la admisión de pruebas cuando la admisión no fué objetada durante el juicio.

INCONGRUENCIAS—ENMIENDAS A LAS ALEGACIONES.—Las cortes de apelación han sido liberales en permitir enmiendas a las alegaciones o considerar la enmienda como que se hace en apoyo de la sentencia, cuando la enmienda es de tal naturaleza que debió haberse permitido por la corte inferior al solicitarse y la justicia substancial se promovería con tal procedimiento. En estas circunstancias se ha resuelto generalmente que la sentencia no será revocada debido a los defectos u omisiones en las alegaciones que se subsanan por la prueba o las alegaciones de la parte contraria, o debido a una incongruencia entre las alegaciones y la prueba, si la suficiencia de las alegaciones no fué debidamente atacada en la corte inferior, o la prueba introducida sin objeción, o aparece claramente que el defecto o incongruencia no afectó a los derechos substanciales de las partes pero * * * la enmienda se considerará que ha sido hecha.

REIVINDICACIÓN—NULIDAD DEL TÍTULO DEL POSEEDOR.—El principio legal de que cuando se establece una acción de reivindicación contra personas que están en posesión de la cosa en controversia por la virtualidad de un título que se creyó era válido, es necesario que se pida primero la nulidad de este título, es aplicable solamente cuando la acción surge de tal nulidad, pero no cuando el derecho a establecer una acción reivindicatoria es independiente de la misma.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. Feliú & Alemañy.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Los apelantes, que fueron los demandados en la corte inferior en una acción reivindicatoria, insisten en que la corte sentenciadora cometió los siguientes errores:

"I. Al denegar la moción que, para la eliminación del párrafo VII de la demanda, se formuló por la demandada-apelante.

"II. Al desestimar la excepción previa que, a la demanda, y por el fundamento de no alegar ésta hechos bastantes para determinar una causa de acción, formuló y radicó la demandada-apelante.

"III. Al desestimar la moción de la demandada-apelante radicada en el curso del juicio, para que se le permitiera radicar una contestación enmendada a la demanda radicada en este caso, la cual contestación enmendada presentó (*tendered*) la demandada con dicha moción en el mismo acto.

"IV. Al admitir en evidencia y considerar y dar peso y efecto

al fallar este caso, a la copia del documento que representa contener una franquicia o concesión hecha por el Gobierno español al causante de la demandada, para establecer un tranvía de vapor de Cataño a Bayamón, el cual documento se identifica en el Récord con la letra 'B' de la prueba del demandante.

"V. Al admitir en evidencia por parte del demandante, y considerar y dar peso y efecto al fallar este caso, a la copia de un documento que representa contener el proyecto de un muelle que habría de construirse para servicio del tranvía de Cataño a Bayamón, el cual se identificó con la letra 'C' de la prueba del demandante.

"VI. Al admitir en evidencia por parte del demandante, y considerar y dar peso y efecto al fallar este caso, al documento que representa ser parte de un plano de los terrenos de Cataño, en el que se dice que están representados los terrenos objeto de esta acción, y que se identificó con la letra 'D' de la prueba del demandante.

"VII. Al admitir en evidencia por parte del demandante, y considerar y dar peso y efecto al fallar este caso, al documento que representa contener el expediente original y plano, relativos a cierta solicitud del causante de la demandada para que se le concedieran unos manglares de Cataño, el cual se identificó con la letra 'E' de la prueba del demandante.

"VIII. Al admitir en evidencia por parte del demandante, y considerar y dar peso y efecto al fallar este caso, al documento que representa contener una copia certificada de la solicitud que se dice fué hecha por el causante de la demandada a la Comisión creada por la Legislatura, en Ley 39, de 1910, en relación con terrenos de Cataño, y resolución recaída a tal solicitud, el cual documento se identificó con la letra 'F' de la prueba del demandante.

"IX. Al admitir en evidencia por parte del demandante, y considerar y dar peso y efecto al fallar este caso, al documento que representa ser un expediente original, contentivo de una concesión hecha por el Gobierno Militar de 1900 al causante de la demandada, para construir un muelle y tender una vía en Cataño, y un plano de tal obra, el cual documento se identificó con la letra 'G' de la prueba del demandante.

"X. Al admitir en evidencia por parte del demandante y considerar y dar peso y efecto al fallar este caso, al documento que representa ser la orden general No. 97 de julio 7 de 1903, publicando una Orden Ejecutiva del Presidente de los Estados Unidos, en relación con la reserva federal de ciertos terrenos, el cual documento se identificó con la letra 'H' de la prueba del demandante.

"XI. Al admitir en evidencia por parte del demandante y considerar y dar peso y efecto al fallar este caso, a la declaración del testigo Manuel Carmona.

"XII. Al admitir en evidencia por parte del demandante, y considerar y dar peso y efecto al fallar este caso a la declaración del testigo Rafael Carmona.

"XIII. Al desestimar la moción de *nonsuit* formulada por la demandada, al terminar la prueba del demandante.

"XIV. Al no permitir que el testigo de la demandada, Rafael del Valle Zeno, declarase a preguntas de la propia demandada, sobre la identidad de la finca descrita en la demanda y la descrita en el documento (plano) letra 'D' del demandante.

"XV. Al no dar peso ni efecto al documento marcado con el No. 1 de la prueba de la demandada, que es copia auténtica del auto declarando acreditado a favor del causante de la demandada el dominio de una finca de 5,485.61 metros cuadrados en Cataño, Municipio de Bayamón, P. R., el cual fué inscrito en el Registro de la Propiedad.

"XVI. Al no dar peso ni efecto a la declaración del testigo de la demandada, Rafael del Valle Zeno.

"XVII. Al dar por probado y concluir, para dictar la sentencia apelada, que el demandante es dueño de, o le 'pertenece en pleno dominio,' la finca descrita en la demanda.

"XVIII. Al dar por probado, y concluir, para dictar la sentencia apelada, que la demandada está en posesión de la misma finca reclamada en la demanda.

"XIX. Al dar por probada y concluir, para dictar la sentencia apelada, que la finca reclamada es la misma de la cual está en posesión la demandada.

"XX. Al considerar para dictar la sentencia apelada, la nulidad del expediente de dominio en virtud del cual se declaró justificado a favor del causante de la demandada el que tuvo aquél y tiene hoy ésta de la finca a que se refiere el *exhibit* 1 de la demandada.

"XXI. Al declarar y concluir para dictar dicha sentencia que el ameritado expediente, el auto en el mismo dictado y su inscripción en el Registro, son nulos.

"XXII. Al dictar sentencia a favor del demandante.

"XXIII. Al imponer las costas en este caso a la demandada."

El primer señalamiento no se discute como una proposición separada y precisa en el alegato. Pero los apelantes,

después de argumentar algo la cuestión envuelta en el segundo señalamiento, o sea, que la demanda no aduce hechos suficientes para determinar una causa de acción, se conforman con hacer referencia al primer señalamiento y adoptan el mismo razonamiento para sostener dicho primer señalamiento.

En la demanda se alega en substancia, entre otros particulares, que El Pueblo de Puerto Rico es dueño en pleno dominio de la propiedad que en ella se describe; que la finca así descrita hasta el año 1898 perteneció y era propiedad de la Corona de España y fué considerada, por tanto, como propiedad del Estado y al concertarse el Tratado de Paz entre la Corona de España y los Estados Unidos, en 10 de diciembre de 1898, la isla de Puerto Rico, incluyendo en dicha cesión todos los terrenos que pertenecían a la Corona de España, fué cedida por el Gobierno de España al de los Estados Unidos; que el Presidente de los Estados Unidos, debidamente autorizado por una ley del Congreso, aprobada en marzo 4 de 1907, renunció a favor de El Pueblo de Puerto Rico, por proclamas presidenciales de varias fechas, todos los terrenos pertenecientes al Gobierno Federal que no se reservó éste, y, como el predio objeto del litigio no fué reservado por el Gobierno Federal por ninguna de las proclamas ni ley alguna, dicha finca pasó a ser y es propiedad del demandante; que en el año 1901 Ramón Valdés Cobián promovió un expediente de dominio ante el Tribunal de Distrito de San Juan, alegando ser el dueño de dicha finca, parte por compra a Juan Carmona y parte por concesión que le hiciera el Gobierno español; que la corte declaró justificado el dominio de la finca, la cual fué inscrita en el Registro de la Propiedad de San Juan; que primero Ramón Valdés Cobián, en perjuicio del demandante, estuvo en posesión de la referida finca, y desde el fallecimiento de dicho Valdés, sus sucesores los demandantes han estado y están en posesión de la finca, con perjuicio también del demandante; que la referida parcela de terreno es y ha sido de la pertenencia del demandante y que ni Ramón

Valdés primero, ni sus sucesores hoy, han tenido ni tienen derecho alguno sobre la misma, y que la sucesión del citado Ramón Valdés está ilegalmente en la posesión de la referida parcela.

En la súplica se pide que se dicte sentencia declarando que la finca en cuestión pertenece en pleno dominio a El Pueblo de Puerto Rico, con el consiguiente pronunciamiento sobre la entrega, cancelación de la inscripción en el registro de la propiedad y pago de las costas al demandante.

Por el artículo 8 del Tratado de Paz a que se ha hecho referencia, España cedió a los Estados Unidos toda la propiedad inmueble en Puerto Rico que con arreglo a derecho era del dominio público y como tal correspondía a la Corona de España.

El primer argumento es que la demanda no alega que la finca en ella descrita pertenece al dominio público y como tal a la Corona de España. A esto sigue una crítica severa respecto al uso de las palabras "Gobierno Federal" donde el término Estados Unidos podría haber servido con más precisión para indicar la verdadera significación. Hacen también referencia los apelantes a la impropiedad de la alegación "de que ni Ramón Valdés, primero, ni sus sucesores hoy, han tenido ni tienen derecho alguno sobre la precitada propiedad y que la sucesión del citado Ramón Valdés está ilegalmente en la posesión de la referida parcela," como equivalente a decir que los demandados no tienen ningún título. Esta contención se robustece entonces con la indicación adicional de que la alegada ilegalidad de la referida posesión es una mera conclusión de derecho, y, por último, y sobre este particular del caso se alega que el demandante no imputa mala fe ni alega la previa nulidad de la orden sobre el título de dominio obtenido por Valdés en el año 1901.

Una ley de la Legislatura de Puerto Rico, transformando la Corte Suprema de Puerto Rico en corte de apelación, aprobada en 12 de marzo, 1903, dispone que esta corte "No

se limitará solamente a infracciones de ley o quebrantamientos de forma, según fueren señalados, alegados o salvados por los litigantes, o según se hiciera constar en sus exposiciones y excepciones, sino que con el más alto fin de justicia, el tribunal puede también entender en todos los hechos y tramitaciones en la causa tal como aparecieren en autos, considerando en igual forma sus méritos para la mejor administración de justicia y del derecho, y evitar injusticias y demoras.''

Y nuestro Código de Enjuiciamiento Civil contiene las siguientes prescripciones:

"Art. 122. — Al considerar una alegación para determinar sus efectos, deberá interpretarse con liberalidad, a fin de asegurar absoluta justicia entre las partes.''

"Art. 142.—En cualquier estado de un pleito la corte no tomará en cuenta algún error o defecto en las alegaciones o procedimientos que no afecten a lo esencial de los derechos de las partes, y no se revocará o invalidará ningún fallo por razón de dicho error o defecto.''

El error, de haber alguno, al declarar sin lugar la moción para eliminar y la excepción previa a la demanda, era de carácter técnico y no perjudicaba. La demanda apenas si puede recomendarse como modelo de buena alegación, pero en el actual estado del procedimiento no estamos dispuestos a hacer un análisis más o menos censurable de la laxitud en el estilo o de la falta de precisión en la elección de las palabras, ni como resultado de tal estricta interpretación revocar la sentencia dictada por la corte de distrito por razón de cualquier mero defecto técnico u omisión en la demanda.

La moción para eliminar términos que envuelven conclusiones de ley fué presentada en el mes de mayo de 1914 y declarada sin lugar en el mismo mes del año 1916. Entonces fué formulada una excepción previa en mayo 18 que se declaró sin lugar en junio 30 del año citado últimamente. En julio 11, 1916, se radicó la contestación.

Los demandados no comparecieron a la celebración del juicio que tuvo lugar en marzo de 1918, pero después de introducida la prueba del demandante y de haber quedado terminado el caso sometido a la decisión de la corte, solicitaron que fuera abierto nuevamente y se les permitiera presentar su prueba. Esta moción fué declarada con lugar.

En abril 4, o sea, el día señalado para presentar su prueba la defensa, solicitaron los demandados permiso para radicar una contestación enmendada. El abogado no dió ninguna explicación o excusa por su omisión en enmendar la contestación antes del juicio. La solicitud se fundaba en las dos simples razones de que la contestación original no había sido jurada como debía haber estado, y que las demás enmiendas propuestas no tenían por fin el sorprender al demandante. Los autos dejan poca o ninguna duda de que debió haberse permitido la enmienda en cuanto al juramento, de no haberse complicado la cuestión con la alegación de nueva materia y "defensas adicionales." Después de una negativa a admitir la contestación enmendada, el abogado ni siquiera hizo constar que podría permitirse a los demandados jurar la contestación original, indicación que no tenemos motivo para suponer que no hubiera recibido la aprobación de la corte. El alegato de los apelantes no establece la proposición de que las "defensas adicionales" de *estoppel* y prescripción hubieran podido prosperar de algún modo mediante la presentación de prueba de todos los hechos alegados en su apoyo. Ni consta por otra parte que no se permitió a los demandados bajo la primitiva contestación probar todo lo que hubieran podido establecer bajo las alegaciones más acabadas de la propuesta substitución. De todos modos, no vemos que se haya cometido abuso de discreción en la negativa de la corte a permitir la radicación de la contestación enmendada.

Decir que la prueba testifical y documental a que se hace mención en los señalamientos 4 al 12, inclusives, fué presentada sin objeción o excepción, sin duda que sería suficiente

contestación a la alegación de los apelantes en cuanto a la admisibilidad de tal prueba.    En lo que concierne a los documentos en cuestión, sin embargo, mucho de lo dicho en el caso ·de *El Pueblo de Puerto Rico* v. *Zamorano,* 28 D. P. R. 722, sería más o menos aplicable, *mutatis mutandi,* al presente caso.    El único razonamiento que se hace para sostener los señalamientos 11 y 12 es que Manuel Carmona, sin haber demostrado su capacidad como perito, se le permitió que hiciera referencia a un plano que mostró el abogado del demandante, que las preguntas hechas a este testigo fueron capciosas en su forma, y que la declaración de Rafael Carmona consistió en conclusiones por él deducidas más que en una exposición de los hechos.    Es claro que a falta de la oportuna objeción en la corte inferior, tales sugestiones no requieren seria consideración en la corte de apelación.

De los autos aparece que la moción de *nonsuit* se fundó en los siguientes motivos: en que no se probaron por el demandante los hechos esenciales de la demanda; en que no identificó la finca reclamada; en que no probó el título del demandante a la finca reclamada; y en que la demanda no aduce hechos suficientes para constituir una causa de acción.

La mayor parte del razonamiento contenido en el décimotercero señalamiento se funda en la teoría de existir una incongruencia fatal entre la alegación *supra,* en cuanto al traspaso del título hecho por los Estados Unidos a Puerto Rico mediante proclamas presidenciales autorizadas por ley del Congreso aprobada en marzo de 1907, y a la fecha y forma de adquisición que aparece de la prueba, en cuyo razonamiento se señala la ley de julio 1, 1902, autorizando al Presidente para hacer dentro del término de un año a partir de la fecha citada últimamente aquellas reservas que a su juicio pudieran ser necesarias de los terrenos públicos en esta isla adquiridos de España en la forma referida y conceder todos aquellos terrenos no reservados de tal modo al Gobierno de Puerto Rico.    El alegato del Gobierno no trata en absoluto la cues-

tión de incongruencia ni pretende contestar el ataque directo sobre la suficiencia de la prueba en cuanto a este eslabón en la cadena que forma el título del demandante, aunque se hace gran hincapié en este aspecto del caso en el alegato de la ape-. lante y la cuestión así suscitada apenas si puede ser pasada por alto como demasiado frívola para no recibir siquiera una consideración casual. Véanse, por ejemplo, los casos de *Johnson* v. *Robinson Consol. Min. Co.* 5 L. R. A. 769; *Equitable Accident Ins. Co.* v. *Osborn,* 13 L. R. A. 267. En verdad que a no ser por el fundamento algo inadecuado para la alegación de sorpresa y prejuicio a lo que ahora se nos llama la atención, tal vez si la revocación y sentencia de *non-suit* sería la única consecuencia lógica de la situación así creada.

El razonamiento de la apelante en cuanto a esto es en cierto modo una reproducción del hecho bajo el señalamiento décimo, *supra.* El documento a que allí se hace referencia es un panfleto impreso titulado ''Ordenes Generales No. 97, Cuartel General del Ejército, Oficina del Ayudante General, Washington, julio 7, 1903.'' Incorporada a ellas hay una orden ejecutiva que parece haberse originado en la Casa Blanca, en la que se cita de la ley de julio 1, 1902, arriba indicada, y se hacen ciertas reservas de terreno para fines militares y termina así: ''Dada bajo mi firma hoy día 13 de junio de 1903.—'*Theodore Roosevelt*'.—*By the President, Elihu Root. Secretary of War.*''

Se cita el caso de *Burke* v. *Miltenberger,* 19 Wall. 519, para sostener la alegación de que una corte no puede tomar conocimiento judicial de una orden militar. La orden general en ese caso *''se dijo por el abogado de Burke''* que fué expedida ''por el Mayor General Banks, al mando del Cuartel General del Golfo.'' La orden allí referida ''se citaba en to-. talidad en el alegato del abogado.'' Con excepción de esto ''nada sobre este particular aparecía, sin embargo, en los autos: y nada había que mostrara que sobre esta orden se hubiera

llamado la atención de alguna corte inferior.'' Al hablar de la alegación respecto al efecto de dicha supuesta orden la Corte Suprema se expresó como sigue:

''A estas proposiciones se contesta con decir que en el estado de las alegaciones y de la prueba estamos en condiciones de resolver sobre la legalidad de esta orden, o determinar qué efecto deberá dársele de haber sido expedida debidamente. No consta en absoluto en los autos, y de todo lo que aparece, de ella nunca se llamó la atención de cualquiera de las cortes de Louisiana ocupada en la decisión del caso. Puede ser que las cortes del país tomarían conocimiento judicial de que Louisiana, en la fecha mencionada, estaba bajo la ocupación militar de nuestras fuerzas, al mando del general Banks, pero no conocemos ninguna regla de ley o práctica que requiera a ésta, o a ninguna otra corte, tomar conocimiento judicial de las varias órdenes expedidas por un comandante militar en el ejercicio de la autoridad que le ha sido conferida.''

En el presente caso la presentación de la orden general, prescindiendo de su valor probatorio, por lo menos fué suficiente para llamar la atención de la corte inferior a la posible, si no probable existencia de la orden ejecutiva citada y para sugerir la probabilidad adicional de otras reservas hechas dentro del año siguiente al decreto en cuestión. En la página 526 del documento del Senado número———, Imprenta del Gobierno, 1914, que es el tomo 6 de una serie de compilaciones de antecedentes relativos a los territorios no contiguos, etc., preparado por el Negociado de Asuntos Insulares, Departamento de la Guerra, encontramos apuntada la ''Orden Ejecutiva de junio 30, 1903, en la que se hacen reservas de terrenos públicos y edificios en Puerto Rico'' y para el texto completo una referencia a ''G. O. núm. 91, A. G. O. julio 7, 1903.'' La misma serie de documentos del Senado contiene el texto íntegro de las proclamas presidenciales donde se hacen otras reservas para diferentes fines de las que hasta ahora hemos tomado conocimiento judicial. *El Pueblo* v. *Dimas,* 18 D. P. R. 1061; *El Pueblo* v. *El Municipio de San Juan,* 19 D. P. R. 656. Verdaderamente que estas cosas son tan bien enten-

didas localmente que en el más reciente de los dos casos citados últimamente, el juez sentenciador parece haber tenido en cuenta los hechos como acontecimientos notorios de historia corriente. No hay duda de que eran asimismo bien conocidos de la corte inferior y del abogado de los demandados en el caso presente. Una copia auténtica de la orden ejecutiva en cuestión pudo haberse obtenido de haberse considerado necesaria por la corte inferior sin el requisito de la presentación formal como prueba. Pero sea esto como fuere, los demandados no aprovecharon la oportunidad que tenían a su alcance de comparecer al juicio y oponerse a la admisión de la orden general, en cuyo caso el demandante podría haber presentado una copia certificada de ella o de la orden ejecutiva misma de no poderse obtener como documento público promulgado por la autoridad legislativa. Dentro de las circunstancias no es necesario considerar la cuestión del conocimiento judicial.

Podemos hacer referencia de paso, sin embargo, al caso de *Central. of Georgia Ry. Co.* v. *Gwynes,* 113 S. E. 183, como decisión reciente, la que tiende a indicar el sabio cuidado en difundir la doctrina de cualquier caso en particular sin tener en cuenta los hechos.

Se cita el caso de *Elmore* v. *Elmore,* 140 Cal. 516, para demostrar que la cuestión de incongruencia puede ser levantada mediante moción de *nonsuit.* En ese caso "la causa de acción, de haber alguna, establecida por las conclusiones" era "enteramente distinta a la alegada en la demanda." La corte inferior había dictado sentencia "sobre una causa de acción no determinada en la demanda ni sostenida por las alegaciones de la misma." Además, "por virtud de la moción de *nonsuit* la apelante suscitó categóricamente el punto en el cual se insistía" en la corte de apelación, "y llamó, por tanto, la atención, así de la corte inferior como de los abogados ante ella," y, por consiguiente, se resolvió que no es-

taba comprendida en la regla de que a una parte no se permitirá levantar una objeción por primera vez en apelación.

La declaración hecha en la moción de *nonsuit* de que "los hechos esenciales de la demanda" no fueron probados y que "el título del demandante a la propiedad reclamada" no quedó establecido, no levanta necesariamente la cuestión de incongruencia. En tanto concierne al punto que ahora se considera, el hecho esencial era el dominio, o a lo sumo un título obtenido de los Estados Unidos. La manera en que se llevaron a cabo las formalidades para el traspaso y la fecha o fechas exactas envueltas son detalles de menor importancia que pudieran o no haber inducido a error a los demandados pero que apenas si pueden considerarse como constitutivos de una nueva causa de acción. En tanto revela la moción de *nonsuit* la supuesta falta de prueba podría haberse referido exclusivamente a la identificación de la finca ya como la parcela en cuestión o como comprendida en los terrenos que pasaron a los Estados Unidos por virtud del tratado.

La exposición del caso en apelación contiene el detalle de haber sido negada la moción de *nonsuit* por la corte por las razones consignadas por escrito y que este documento se transcribiría como parte de los autos en apelación. No parece que esto se hizo y nada hay que demuestre que al discutirse la moción de *nonsuit,* o en algún otro momento, llamaron los demandados la atención de la corte o del abogado del demandante a la cuestión de incongruencia sometida ahora a nuestra consideración.

Nos es difícil creer que un error tan palpable en la alegación de haber sido debidamente impugnado en la corte inferior no hubiera sido prontamente corregido mediante enmienda para ajustarlo a la prueba.

"Las cortes de apelación han sido liberales en permitir enmiendas a las alegaciones o considerar la enmienda como que se hace en apoyo de la sentencia, cuando la enmienda es de tal naturaleza que debió haberse permitido por la corte inferior al solicitarse y la justicia subs-

tancial se promovería con tal procedimiento. En estas circunstancias se ha resuelto generalmente que la sentencia no será revocada debido a los defectos u omisiones en las alegaciones que se subsanan por la prueba o las alegaciones de la parte contraria, o debido a una incongruencia entre las alegaciones y la prueba, si la suficiencia de las alegaciones no fué debidamente atacada en la corte inferior, o la prueba introducida sin objeción, o aparece claramente que el defecto o incongruencia no afectó a los derechos substanciales de las partes pero \* \* \* la enmienda se considerará que ha sido hecha.'' Nota al caso de *Ellinghouse* v. *Ajax Live Stock Co.*, L. R. A. 1916 D, pág. 841, en la pág. 843.

Sin entrar en pormenores innecesarios sólo tenemos que agregar que la finca en cuestión fué identificada con razonable certeza y el título del demandante a la misma quedó establecido satisfactoriamente por lo menos en lo que concierne a cualquier punto levantado específicamente en este caso. No nos sentimos justificados en escrudiñar cuestiones que no se discuten en el curso del alegato de la apelante que consta de ochenta y tres páginas.

Al testigo Rafael del Valle Zeno se le mostró un plano que había sido presentado por el demandante y pidió que lo cotejara con la descripción del terreno en controversia que aparece en la demanda y que dijera si la finca descrita en el plano era o no idéntica a la descrita en la demanda. Formulada objeción la corte resolvió que ése no era el modo adecuado de acreditar este extremo y el abogado de los demandados tomó excepción sin expresar su fundamento. Se permitió entonces a los abogados examinar a este testigo sin inconveniente sobre los alegados defectos del plano y para establecer cualquier base que en efecto pudiera existir para la supuesta discrepancia. Ni siquiera el alegato en apelación indica qué diferencia hay, de haber alguna, entre las dos descripciones, ni se cita ninguna autoridad para sostener el décimocuarto señalamiento. Si la información que así se trató de obtener no es cosa que la corte misma era tan competente para determinar como lo sería cualquier agrimensor al cono-

cerse los datos en que podría basarse una opinión, por lo menos no se demuestra que haya habido perjuicio.

Podemos considerar los señalamientos restantes menos hasta cierto punto quizá el vigésimo tercero, como de diferentes aspectos al vigésimo segundo. En verdad que la mayor parte si no todas las cuestiones envueltas se discuten en el alegato de los apelantes bajo la proposición general de que la sentencia apelada "es contraria a la ley y a la prueba."

Aquí vuelve a tratarse mucho de la falta en alegar defectos en el título de dominio de los demandados o en solicitar que sea anulado y se ataca el pronunciamiento de la sentencia que declara que es nulo, por ser en exceso del remedio solicitado, citándose los casos de *Sache* v. *Gallette,* 11 L. R. A. (U. S.) 803; *Reynolds* v. *Stockton,* 140 U. S. 254, y *Belford* v. *Woodward,* 29 L. R. A. 593.

"El principio legal de que cuando se establece una acción de reivindicación contra personas que están en posesión de la cosa en controversia por la virtualidad de un título que se creyó era válido, es necesario que se pida primero la nulidad de este título, es aplicable solamente cuando la acción surge de tal nulidad, pero no cuando el derecho a establecer una acción reivindicatoria es independiente de la misma. (Opiniones de la Corte Suprema de España de octubre 16, 1873, enero 17, 1889, abril 6, 1889 y febrero 13, 1892)." *El Pueblo* v. *Dimas, supra.*

Pero dicen los apelantes: Derivamos el título por compra a Juan Carmona y el demandante no ha probado que Carmona adquirió la propiedad así traspasada por él, de igual modo que Calvo Hermida y María F. Ríos, obtuvieron posesión de los terrenos envueltos en el caso de Dimas. Aparte del hecho de que dos hijos de Carmona declararon que la pequeña parcela de terreno vendida por su padre a Valdés había sido ganada al mar, la prueba en conjunto revela más allá de toda duda razonable, que la finca en controversia fué primeramente parte de un manglar y que esto era bien sabido y reconocido por

Ramón Valdés, tanto antes como mucho después de su alegada compra a Carmona. De ser esto cierto, el traspaso, si alguno hubo, hecho por Carmona no podía establecer ningún título aparente. *El Pueblo* v. *Zamorano, supra.* Véase también el caso de *Doolan* v. *Carr*, 125 U. S. 618. Dentro de las circunstancias no es necesario discutir la cuestión de la buena fe a la que se dedican varias páginas en el alegato de los apelantes.

La teoría de la demanda fué ciertamente que habiendo formado parte la finca en controversia del dominio público cuando Valdés obtuvo su llamado título de dominio, la orden decretando el dominio era enteramente nula. Tal vez debió el demandante haber alegado el conocimiento que de los hechos tenía Valdés, pero esa omisión quedó subsanada por la prueba presentada sin objeción por parte de los demandados. La alegación de una conclusión derivada de los hechos expresados en nada hubiera robustecido la virtualidad de tales hechos que indican la completa nulidad del título de los demandados. La súplica de la demanda para la cancelación de las inscripciones en el registro de la propiedad claramente que tiene por objeto que la corte pudiera considerar la orden decretando el dominio como inexistente sin hacer un pronunciamiento expreso en este sentido. De todos modos, toda vez que los demandados comparecieron en la corte inferior, obtuvieron la apertura del caso e introdujeron toda su prueba incluso la orden decretando el dominio, las autoridades que sostienen que una sentencia dictada en rebeldía en exceso del remedio invocada es nula por falta de jurisdicción, no son de aplicación.

Atendidas todas las circunstancias no podemos declarar que la corte inferior abusara de su discreción ya en la apreciación de la prueba, o en la concesión de costas, debiendo confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociado Aldrey.

El Juez Asociado Sr. Wolf firmó "Conforme con la sentencia."

### OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. WOLF.

Estoy de acuerdo con los puntos principales de la anterior opinión así como con su razonamiento. Me parecía simplemente que la cuestión de la falta de prueba o incongruencia estaba suficientemente cubierta por los artículos 136, 137 y 138 del Código de Enjuiciamiento Civil, los cuales prescriben lo siguiente:

"Art. 136.—Ninguna incongruencia entre las alegaciones y las pruebas en un juicio se tendrá por esencial, a menos que por su índole y efectos dé lugar a que la otra parte incurra en su perjuicio, en falsas apreciaciones al mantener su demanda o su contestación. Siempre que una de las partes resultare así equivocada, la corte podrá disponer que se enmiende la alegación en los términos que estimare justos.

"Art. 137.—Cuando la incongruencia no fuere esencial, según lo previsto en el precedente artículo, la corte podrá resolver que el hecho se admita de acuerdo con la prueba, o disponer una enmienda inmediata sin costas.

"Art. 138.—Sin embargo, cuando las alegaciones de la demanda, o contestación a que se refiera la prueba, queden sin probar, no en algún particular o particulares solamente, sino en su alcance y significación general, no deberá considerarse como un caso de incongruencia, con arreglo a los dos últimos artículos, sino como deficiencia de la prueba."

Por tanto, era innecesario ya citar o fundarse en la jurisprudencia general de otros Estados que no sea el de California, según lo explica la nota del caso de *Ellinghouse* v. *Ajex Live Stock Co.*, L. R. A. 1916 D, 843, transcrita en la opinión de la mayoría. La doctrina citada puede o no tener mayor alcance que las prescripciones del Código, pero mi conformidad descansa en la suficiencia de las prescripciones del Código, para comprender la cuestión ante nuestra consideración.