222 F.2d 395
 95 U.S.App.D.C. 370
 NATIONAL SAVINGS AND TRUST COMPANY et al., Surviving
Trustees, Appellants,
v.
Herbert BROWNELL, Jr., Attorney General of the United
States, as Successor to the Alien Property
Custodian, Appellee.
 No. 12217.
 United States Court of Appeals, District of Columbia Circuit.
 Argued Dec. 9, 1954.
Decided March 3, 1955.
Writ of Certiorari Denied June 6, 1955.
 
 [95 U.S.App.D.C. 371] Mr. John E. Powell, Washington D.C., with whom Messrs. Arthur P. Drury, John M. Lynham and Charles T. Tittmann, Washington, D.C., were on the brief, for appellants.
 Mr. George B. Searls, Atty., Dept. of Justice, Washington, D.C., for appellee. Mr. Leo A. Rover, U.S Atty., and Mr. Lewis Carroll, Asst. U.S. Atty., Washington, D.C., also entered appearances for appellee.
 Before EDGERTON, WILBUR K. MILLER, and PRETTYMAN, Circuit Judges.
 PRETTYMAN, Circuit Judge.
 
 
 1
 This is an appeal from a judgment on the pleadings entered in three civil actions, consolidated in the District Court. The actions were brought[1] by the Attorney General of the United States, as successor to the Alien Property Custodian, and sought enforcement of vesting orders issued by him. The judgment was that the plaintiff was entitled to immediate possession of certain property covered by the vesting orders, and it directed the defendants to account for the property and to deliver it to the plaintiff.
 
 
 2
 The property-- notes and securities-- involved in the controversy was held by trustees under three agreements executed in 1924. The Attorney General[2] determined that it was owned or controlled, and held on behalf of, nationals of a designated enemy country (Germany). In 1948 he issued so-called 'right, title and interest vesting' orders[3] in respect to the property, and in February ahd May, 1951, issued so-called 'res vesting' orders, by the terms of which he purported to vest in himself the right to immediate possession of the property.[4] The civil actions in the District Court, as we have noted, sought enforcement of his right to possession.
 
 
 3
 Our appellants are the surviving trustees under the trust instruments. They argue that the power of seizure sought to be exercised in this matter by the Attorney General was derived from the war power conferred by the Constitution;[5] that at some moment of time following the cessation of hostilities the rules of international law, the Fifth Amendment, and applicable treaties become effective and protect property of aliens from seizure; that the existence of war conditions is a valid subject to judicial inquiry; and that the constitutional power to seize property had terminated before these vesting orders were issued.
 
 
 4
 The President declared the termination of Hostilities of World War II on December 31, 1946.[6] Treaties of peace with Italy, Roumania, Bulgaria and Hungary were concluded on February 10, 1947.[7] By a joint resolution approved July 25, 1947, many wartime statutes were repealed.[8] Congress, by a joint resolution of October 19, 1951,[9] declared the 'end of the war' with Germany. So at [95 U.S.App.D.C. 372] the time of the vesting orders here involved hostilities had ceased and many factual circumstances premised upon peace had occurred; but no treaty of peace with Germany had been executed, and neither the Congress nor the President had formally declared the end of the war with Germany.[10]
 
 
 5
 Our appellants, the trustees, are met at once by the well-established propositions that an action brought by the Alien Property Custodian under Section 17 of the Trading with the Enemy Act is a possessory action only-- a libel, Justice Holmes called it-- not to be delayed by defenses,[11] and that a claimant is left to such judicial proceedings as he (the claimant) may bring under Section 9(a) of the Act[12] and such administrative proceedings as he may initiate under Section 32.[13] And appellants are also met by the provision in this statute which defines 'end of the war' for its purposes as meaning 'the date of proclamation of exchange of ratifications of the treaty of peace, unless the President shall, by proclamation, declare a prior date'.[14] But appellants say their argument cuts across those propositions. They say the war power itself had ceased to exist by the time these vesting orders were issued and so the very right to seize had ceased to exist and the orders were null and void. Thus a bald problem of constitutional law is posed. By the Constitution power 'To declare' war was vested in the Congress.[15] From that language and upon constitutional principle it would seem that a state of war, constitutionally speaking and as between nations, is a matter of congressional declaration and not a matter of determination from facts and circumstances.[16] The Constitution gave the President, with the advice and consent of the Senate, power to make treaties,[17] and of course a treaty of peace is within that power. So it would seem that, as a matter of constitutional law, the end of war would be either by a declaration by the Congress or by a treaty duly ratified. But the courts have not followed so simple a rule,[18] and the point is presently in [95 U.S.App.D.C. 373] a murky area. One author says that one date can be used for some purposes and other dates for other purposes as the end date of war.[19]
 
 
 6
 In no case has the Supreme Court held, as a matter of decision, that war does not cease until a declaration or treaty. But it has held repeatedly that various combinations of circumstances do not terminate a war, absent formal political action to that purpose.[20] These cases seem to establish that the war power, once existent, continues to exist until either a declaration by the Congress or a proclamation specifically to that effect by the President. In Commercial Trust Co. of New Jersey v. Miller[21] a joint resolution declaring the state of war with Germany (World War I) at an end had been adopted by the Congress and the President had issued a proclamation of peace, but the Supreme Court held valid the reservation by Congress of the Trading with the Enemy Act from the legislation ending the war. Thus the Court held valid a congressional reservation of a war power even after a declaration otherwise ending the war. In the case at bar we need go no further than the cited cases go. The sum of the facts and circumstances enumerated by our appellants does not total a termination of constitutional war power, so long as neither the Congress nor the President had declared the end of the war.
 
 
 7
 It follows that the judgment of the District Court must be Affirmed.
 
 
 
 [1]
 Under Sec. 17 of the Trading with the Enemy Act, 40 Stat. 425 (1917), 50 U.S.C.A.Appendix § 17
 
 
 [2]
 Acting under authority of the Trading with the Enemy Act, 40 Stat. 411 et seq. (1917), as amended, 50 U.S.C.A.Appendix § 1 et seq.; Exec. Order No. 9193, 7 Fed.Reg. 5205 (1942), 3 Code Fed.Regs. 1174 (Cum.Supp.1943), as amended by Exec. Order No. 9567, 10 Fed.Reg. 6917 (1945), 3 Code Fed.Regs. 77 (Supp.1945), 50 U.S.C.A.Appendix § 6 note; and Exec. Order No. 9788, 11 Fed.Reg. 11981 (1946), 3 Code Fed.Regs. 169 (Supp.1946), 50 U.S.C.A.Appendix § 6 note
 
 
 [3]
 See the two Zittman v. McGrath cases, 1951, 341 U.S. 446 and 471, 71 S.Ct. 832 and 846, 95 L.Ed. 1096 and 1112
 
 
 [4]
 There was no 'right, title and interest vesting' order issued in 1948 in respect to one of the three trusts, but the 1951 order covering the property in that trust was both a 'res vesting' order and a 'right, title and interest vesting' order
 
 
 [5]
 Art. I, § 8, cl. 11
 
 
 [6]
 Proclamation No. 2714, 61 Stat. 1048, 50 U.S.C.A.Appendix § 601 note
 
 
 [7]
 61 Stat. 1369, 1799, 1953 and 2109, respectively
 
 
 [8]
 61 Stat. 449
 
 
 [9]
 65 Stat. 451, 50 U.S.C.A.Appendix note preceding section 1
 
 
 [10]
 The President did issue such a proclamation on October 24, 1951, No. 2950, 66 Stat. C3, 50 U.S.C.A.Appendix note preceding section 1
 
 
 [11]
 Central Union Trust Co. of New York v. Garvan, 1921, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403; Commercial Trust Co. of New Jersey v. Miller, 1923, 262 U.S. 51, 43 S.Ct. 486, 67 L.Ed. 858; Silesian-American Corp. v. Clark, 1947, 332 U.S. 469, 68 S.Ct. 179, 92 L.Ed. 81; and see Cummings v. Deutsche Bank, 1937, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545
 
 
 [12]
 McGrath v. Zander, D.C.Cir., 1949, 85 U.S.App.D.C. 334, 177 F.2d 649; Becker Steel Co. of America v. Cummings, 1935, 296 U.S. 74, 79, 56 S.Ct. 15, 80 L.Ed. 54; Josephberg v. Markham, 2 Cir., 1945, 152 F.2d 644; Clark v. Uebersee Finanz-Korp., 1947, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88; Zittman v. McGrath, 1951, 341 U.S. 471, 71 S.Ct. 846, 95 L.Ed. 1112
 
 
 [13]
 See Guessefeldt v. McGrath, 1952, 342 U.S. 308, 314-315, 72 S.Ct. 338, 96 L.Ed. 342
 
 
 [14]
 40 Stat. 412 (1917), 50 U.S.C.A.Appendix § 2(c)
 
 
 [15]
 Art. I. § 8, cl. 11. In the report of the Committee of Detail of the Constitutional Convention, the power given Congress was 'To make war'. 2 Farrand, Records of the Federal Convention 143, 168, 182 (1927). On the floor of the Convention the word 'make' was stricken and the word 'declare' inserted. There was a short debate, in which Mr. Elseworth pointed out the difference between making war and making peace, remarking, 'War also is a simple and overt declaration. peace attended with intricate & secret negociations.' Id. at 319. A motion to add 'and to make peace' was unanimously rejected. Id. at 313, 319
 
 
 [16]
 See Montoya v. United States, 1901, 180 U.S. 261, 267, 21 S.Ct. 358, 45 L.Ed. 521, 524, quoting from the concurring opinion of Mr. Justice Washington in Bas v. Tingy, 1800, 4 Dall. 37, 40, 4 U.S. 37, 40, 1 L.Ed. 731, 733
 
 
 [17]
 Art II, § 2, cl. 2
 
 
 [18]
 An interesting discussion is in the opinions of the Justices, delivered seriatim, in Bas v. Tingy, 1800, 4 Dall. 37, 4 U.S. 37, 1 L.Ed. 731. See also Freeborn v. The Protector, 1872, 12 Wall. 700, 79 U.S. 700, 20 L.Ed. 463; Burke v. Miltenberger, 1874, 19 Wall. 519, 86 U.S. 519, 22 L.Ed. 158; Prize Cases (The Amy Warwick), 1863, 2 Black 635, 67 U.S. 635, 17 L.Ed. 459; The Pedro, 1899, 175 U.S. 354, 20 S.Ct. 138, 44 L.Ed. 195; United States v. Anderson, 1869, 9 Wall. 56, 76 U.S. 56, 19 L.Ed. 615; Lamar v. Browne, 1875, 92 U.S. 187, 23 L.Ed. 650; McElrath v. United States, 1880, 102 U.S. 426, 26 L.Ed. 189; Jacob Ruppert, Inc., v. Caffey, 1920, 251 U.S. 264, 40 S.Ct. 141, 64 L.Ed. 260
 
 
 [19]
 Hudson, The Duration of the War Between the United States and Germany, 39 Harv.L.Rev. 1020, 1021 (1926)
 
 
 [20]
 Ludecke v. Watkins, 1948, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 1881; Woods v. Miller Co., 1948, 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596; Fleming v. Mohawk Co., 1947, 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375; Hamilton v. Kentucky Distilleries Co., 1919, 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194. And see Citizens Protective League v. Clark, D.C. Cir., 1946, 81 U.S.App.D.C. 116, 121, 155 F.2d 290, 295, certiorari denied, 1946, 329 U.S. 787, 67 S.Ct. 354, 91 L.Ed. 674; Feyerabend v. McGrath, D.C. Cir., 1951, 89 U.S.App.D.C. 33, 189 F.2d 694; In re Miller, 2 Cir., 1922, 281 F. 764, 775
 
 
 [21]
 1923, 262 U.S. 51, 43 S.Ct. 486, 67 L.Ed. 858