María Dragoni y Dragoni, demandante y apelada, *v.* The United States Fire Insurance Co., demandada y apelante; María Dragoni y Dragoni, demandante y apelante, *v.* The United States Fire Insurance Co., deman-

dada y apelada; MARÍA DRAGONI Y DRAGONI, demandante y apelada, *v.* THE LONDON ASSURANCE CORPORATION, demandada y apelante; MARÍA DRAGONI Y DRAGONI, demandante y apelante *v.* THE LONDON ASSURANCE CORPORATION, demandada y apelada.

Nos. 3685, 3686, 3687 y 3688.—*Vistos:* Mayo 27, 1926. *Resuelto:* Marzo 24, 1927.

1. EVIDENCIA—PRUEBA DOCUMENTAL—ESCRITOS Y PUBLICACIONES PRIVADOS—FOTOGRAFÍAS—CONDICIÓN EN CIERTO TIEMPO DE UNA ESCENA.—Cuando se presenta prueba para demostrar que en cierto momento después de un fuego había varios montones de materia asegurada—café—ardiendo, fotografías de la escena del suceso ofrecidas para demostrar que en dicho momento no habían tales montones ni ninguno, son pertinentes.

2. EVIDENCIA—PRUEBA PRIMARIA Y SECUNDARIA—DE LA MEJOR PRUEBA EN GENERAL—ADMISIBILIDAD DE LA MEJOR PRUEBA—FOTOGRAFÍAS. — Fotografías tomadas para demostrar una condición en cierto tiempo son prueba primaria y la mejor prueba objetiva que puede presentarse de una escena.

3. EVIDENCIA—PRUEBA DE OPINIÓN—MATERIAS OBJETO DE TESTIMONIO PERICIAL—CUESTIONES OBJETO DE OBSERVACIÓN.—La cuestión de los efectos de un incendio en café o granos de café puede ser objeto de la experiencia de cualquier persona que haya observado un número de fuegos en que se haya quemado tal producto.

4. APELACIÓN Y ERROR—REVISIÓN— ERRORES NO PERJUDICIALES— RESOLUCIONES SOBRE PREGUNTAS HECHAS A LOS TESTIGOS EN EL EXAMEN DE ÉSTOS—PREGUNTAS HIPOTÉTICAS.—Cuando una pregunta hipotética relativa a la destrucción de una substancia—café—por fuego que se presume duró dos horas, se objeta porque la prueba no demostraba que el fuego duró sólo ese tiempo, y aquélla se admite, si el testigo manifiesta posteriormente que aún si el siniestro hubiera durado diez horas o más se hubieran encontrado señales de la existencia de tal substancia, el error en la admisión de la pregunta, de existir, no es perjudicial.

5. SEGUROS—ACCIONES FUNDADAS EN PÓLIZAS—APELACIÓN—REVISIÓN—ADMISIÓN DE PRUEBAS—FOTOGRAFÍAS TOMADAS DÍAS DESPUÉS DEL FUEGO.—La objeción a la admisión de fotografías tomadas días después de un siniestro por razón del tiempo transcurrido no beneficia a la parte que objeta cuando su prueba es al efecto de que en la época en que se tomaron aún humeaba el fuego, y menos aún cuando la situación de los objetos quemados no ha cambiado en dicho tiempo.

6. EVIDENCIA—PRUEBA DE OPINIÓN—COMPETENCIA DE LOS PERITOS—DE LAS CAUSAS Y DE LOS EFECTOS—EFECTOS DE UN INCENDIO EN UNA SUBSTANCIA DADA.—La declaración de uno que califica debidamente como químico sobre los efectos de un incendio en un café no está sujeta a objeción porque el perito no exprese conocimiento del grado de calor necesario para el fuego destruir el café en su totalidad.

7. SEGUROS—ACCIONES FUNDADAS EN PÓLIZAS—DE LA SENTENCIA—EN GENERAL.—En acción en cobro de póliza que cubre un riesgo—café almacenado—

cuando la prueba es fuerte y convincente de que no quedó indicio alguno de café después del fuego, ella es prueba circunstancial poderosa para justificar sentencia al efecto de que el incendio no destruyó ningún café.

8. Seguros—Acciones Fundadas en Pólizas—De la Evidencia en General—Prueba del Origen Incendiario del Siniestro.—Cuando el asegurado hace una reclamación fraudulenta del valor de una cosa asegurada que nunca se ha quemado, y cuando la prueba demuestra que un incendio comienza rápida e inexplicablemente, que en el momento del incendio las personas que acostumbraban vivir en la casa están ausentes y el agente del asegurado está solo en ella, levantado y parcialmente vestido, que éste aparentemente no hace esfuerzo por evitar el fuego o salvar los muebles asegurados; que algunos de éstos, así como materias objeto de otro riesgo, son vistos en otros sitios posteriormente, todo ello demuestra que tal incendio no fué casual, pudiendo considerarse, en relación con dicha cuestión, el hecho de que los libros del asegurado se alteraren después del fuego, y las falsas manifestaciones de los agentes del asegurado en la silla testifical.

9. Seguros—Acciones Fundadas en Pólizas—Cumplimiento de las Condiciones Obligatorias Precedentes—Aviso y Prueba de Pérdidas.—La condición impuesta al asegurado por la cláusula sobre presentación de prueba de pérdidas, siendo obligatoria para aquél, en ausencia de renuncia u otra condición similar, su incumplimiento impide que el asegurado obtenga indemnización.

10. Seguros—Del Contrato en General—Naturaleza, Requisitos y Validez—Validez del Contrato—Cláusulas que no Impiden el Derecho de Reclamar Ante los Tribunales—Cláusula Relativa a la Prueba de Pérdidas.—La sección 175 de la Ley de Seguros de 1921 (p. 649) no impide que una compañía de seguros insista en que se le presente la prueba de pérdidas, y una cláusula en la póliza exigiendo tal prueba no es una limitación al remedio sino al derecho de demandar.

11. Seguros—Aviso y Prueba de Pérdidas—Renuncia de la Prueba de Pérdidas—En General.—El hecho de que los agentes de una compañía o el ajustador concurran al sitio del siniestro casi inmediatamente o días después y practiquen toda clase de investigaciones, hagan preguntas y se lleven libros del asegurado no constituye una renuncia de la condición en la póliza que exige presentación de prueba de pérdidas dentro del término estipulado.

12. Seguros—Acciones Fundadas en Pólizas—Peso de la Prueba—Renuncia de Estipulaciones en las Pólizas.—En acción en cobro de póliza, el peso de la prueba recae sobre el demandante para demostrar que la compañía renunció a cualquiera estipulación de la póliza.

Sentencia de *R. Díaz Cintrón,* J. (Ponce), declarando con lugar las demandas en los casos 3685 y 3687, sin costas, y sin lugar las demandas en los Nos. 3686 y 3688, sin costas. *Revocadas* las dictadas en los dos primeros casos y *confirmadas* las dictadas en los dos últimos.

*J. H. Brown* y *Clemente Ruiz Nazario,* abogados de la apelante en los casos Nos. 3685 y 3687 y *Jacinto Texidor,* abogado de la apelada en dichos casos; *Jacinto Texidor,* abogado de la apelante

en los casos Nos. 3686 y 3688 y *J. H. Brown* y *Clemente Ruiz Nazario,* abogados de la apelada en dichos casos.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

María Dragoni entabló cuatro demandas contra distintas compañías de seguros para indemnizarse de las pérdidas que alega le fueron ocasionadas por un incendio ocurrido en la noche del 25 de enero de 1924. Dos de los pleitos eran contra la United States Fire Insurance Company, y los otros dos contra la London Assurance Corporation. Se alegaba que estas dos compañías eran solidariamente responsables de las pérdidas ocasionadas por incendio, cada una bajo dos riesgos distintos, siendo uno de ellos la casa y los muebles de la demandante y el otro un café que se suponía estar almacenado en el sótano de la misma casa, que era un edificio de dos plantas, de madera, y techado de zinc.

Los pleitos fueron entablados en la Corte de Distrito de Ponce, y, por estipulación de las partes, el juicio de las cuatro acciones se celebró conjuntamente en una sola vista. La corte dictó sentencia a favor de la demandante por la casa y su contenido, y declaró sin lugar las demandas en cuanto a la reclamación por el café que la demandante alegaba haber sido destruído por el siniestro. Ambas partes apelaron, y han radicado una estipulación para presentar una sola transcripción de la evidencia.

La demandante introdujo prueba testifical tendente a demostrar que en la noche que precedió al fuego estaban almacenados en dicha casa de quinientos a seiscientos sacos de café. Por otra parte, las demandadas presentaron prueba muy fuerte tendente a demostrar que no se había quemado en absoluto café alguno. Un número de testigos, algunos de los cuales fueron ofrecidos como peritos, declaró que no se había encontrado indicio alguno de café en la propiedad destruída por las llamas, y que los escombros no eran otra cosa que cenizas de madera; que donde se quemaba

café invariablemente tenía que haber algunas señales del mismo. Tenemos poca duda de que si la corte tenía derecho a considerar toda la prueba sometida por las demandadas, sus conclusiones respecto a que no había ningún café almacenado estuvieron enteramente justificadas. Sin embargo la demandante se opuso a gran parte de esta prueba, y ha señalado debidamente las excepciones tomadas, las cuales consideraremos oportunamente. Para mayor conveniencia, nos referiremos a las partes tal como fueron designadas en la corte inferior.

[1, 2] El primer señalamiento de error se refiere a cinco fotografías que fueron ofrecidas por las demandadas y admitidas por la corte. Los autos demuestran que estas fotografías fueron tomadas por o bajo la dirección de William D. López, quien era sub-agente de las compañías demandadas, y quien fué a la escena del suceso dentro de las veinticuatro horas en que el mismo ocurrió. La demandante había presentado prueba tendente a demostrar que en la mañana siguiente al día del siniestro había varios montones de café ardiendo, y el objeto de estas fotografías era demostrar que en dicha mañana no había tales montones ni en realidad había ningún montón. La demandante se opuso a su admisión porque no hubo prueba de cuándo fueron tomadas, o que la demandante hubiera tenido participación alguna al tomarlas; que tal evidencia era impertinente y que no podía representar los efectos destruídos, porque la misma era en beneficio propio (*self-serving*) y de referencia. En el caso de *Vidal* v. *Porto Rico Ry., Light & Power Co.,* 32 D.P.R. 779, dijimos lo siguiente:

"Se formuló objeción a la admisión de estas fotografías por no haber sido identificadas por el fotógrafo; pero lo mismo que las firmas y otros particulares, las personas que demuestran un verdadero conocimiento pueden identificarlas."

La idea era más o menos que, una vez debidamente identificadas, las fotografías eran admisibles al igual que otra

prueba, y sujetas a la pertinencia que tuvieran con los hechos en controversia. La pertinencia de las fotografías ofrecidas en este caso era muy evidente. Trataban de destruir las manifestaciones de los testigos de la demandante de que había montones de café ardiendo en la mañana del día siguiente al fuego. Una fotografía tomada para demostrar una condición en cierto tiempo es la mejor prueba objetiva que puede presentarse, presumiendo, desde luego, que el fotógrafo fuera exacto al tomarla. Las fotografías ofrecidas en evidencia están sujetas a las objeciones que corresponden al arte fotográfico, o sea, que pueden estar fuera de foco o que la luz, la sombra, y otros detalles, no estén debidamente representados; pero eliminando éstas y otras excepciones posibles, las fotografías de determinada escena en determinado tiempo tienen cierto peso que la corte debe apreciar. *Merrill* v. *Marietta Torpedo Co.,* 79 W. Va. 669, 92 S. E. 112, L.R.A. 1917-F, 1043-1048; 10 R. C.L. 992; 10 R.C.L. 1153, 1156. *Diller* v. *Northern Cal. Power Co.,* 162 Cal. 538.

Las fotografías no son prueba en beneficio propio (*self-serving evidence*), ni tampoco son de referencia. La ausencia de la demandante no tiene mayor importancia que la que tendría su presencia al declarar un testigo ocular; tanto la una como la otra es evidencia primaria. En realidad de verdad, las fotografías fueron tomadas estando en la escena del suceso varios agentes y representantes de la demandante, quienes no protestaron al ser tomadas. Naturalmente, la parte contraria no puede repreguntar a una fotografía que muestra la condición física de un edificio, como tampoco puede hacerlo cuando el jurado hace una inspección ocular o cuando los testigos hablan de las condiciones de tal edificio, pero puede siempre repreguntar a un testigo respecto a su habilidad o destreza para tomar fotografías, y, desde luego, puede demostrar que los hechos son

distintos, argumentando a la corte que las fotografías no son una verdadera representación de los hechos materiales.

[3] El segundo señalamiento es que la corte cometió error al permitir a las demandadas preguntar al testigo J. Otilio Vega acerca de otros incendios en que se había quemado café. Resultó que las demandadas trataban de demostrar, por la experiencia del testigo en otros incendios, que cuando se quemaba café era prácticamente imposible que desaparecieran todas señales del mismo dentro del tiempo en que se desarrolló este incendio. Las objeciones que la demandante formuló fueron dos: Primera, que el testigo no había sido debidamente cualificado como perito y no tenía suficientes conocimientos químicos que le permitieran exponer los resultados de un incendio ni la cantidad de calor que se requería para consumir el café; y segunda, que no hubo demostración alguna de que las circunstancias en otros incendios fueran iguales o parecidas a las del que la corte tenía ante sí.

Bajo el tercero y sexto señalamiento de error la demandante levantó objeciones similares a la admisión de las declaraciones de Pedro Schuck y Pedro Vivas Valdivieso, respectivamente. Estos dos testigos, al igual que el testigo Vega, *supra,* aunque no tenían preparación especial en química, satisficieron a la corte, y nos satisfacen a nosotros, de que en general estaban calificados para exponer su opinión sobre los efectos del incendio en el café o en granos de café. Cada uno de estos testigos había tenido experiencia y había hecho observaciones en un sinnúmero de fuegos en que se había quemado café. No era necesario que alguno de ellos demostrara especial preparación química alguna, porque cualquier persona puede ser un perito en muchas materias sin haber tenido preparación en un colegio o universidad o sin haber hecho un estudio especial de los elementos de química. La cuestión de los efectos de un incendio en el café o en los granos de café muy bien puede

ser objeto de la experiencia de cualquier persona que haya visto un número de fuegos en que se haya quemado café. Además, uno o más de los testigos habían tenido experiencia en tostar café, por haberse dedicado al cultivo de este grano. Era innecesario poder hablar de la cantidad de calor que se necesitaría para destruir todo indicio de que se había quemado café, estado de cosas que ninguno de los testigos jamás había presenciado.

[4] Bajo el cuarto señalamiento de error, la demandante se opone a cierta pregunta hipotética hecha al testigo Pedro Schuck. Dicha pregunta era extensa y trataba de hacer un resumen de ciertos hechos previos referentes a la destrucción de café por el fuego, y si era posible que todo el café se hubiese quemado en las condiciones indicadas. Se presuponía que el incendio sólo había durado dos horas. La objeción específica de la demandante era que la prueba no demostraba que el incendio hubiera durado sólo dos horas. La tendencia general de la prueba de la demandante era que el fuego había durado muy poco tiempo, pero al continuarse el interrogatorio del testigo, éste manifestó que aún si el siniestro hubiera durado diez horas, o aún mucho más tiempo, se hubieran encontrado señales de que allí había café. De suerte que, aún suponiendo que hubiese habido un ligero error, no hubo perjuicio.

[5] Bajo el quinto señalamiento de error, se hizo objeción a la admisión de ciertas fotografías tomadas unos ocho días después de ocurrido el incendio. La prueba de la demandante fué al efecto de que el fuego aún humeaba en dicha época, y por consiguiente, la objeción de que este período de tiempo era demasiado tarde no puede beneficiar a la demandante. La situación de los objetos quemados no había cambiado en los ocho días; e igualmente, en cuanto a la admisión de las otras fotografías, la cuestión ante la corte era la apreciación de las declaraciones.

[6] Se señaló también como el error número 7 el ad-

mitir la declaración de Angel N. Pesquera como perito. La objeción específica era que él no tenía conocimiento del grado de calor necesario para destruir el café en su totalidad. La respuesta a esta contención es que el testigo fué debidamente calificado como químico y no era necesario que ninguno de los testigos tuviera exacto conocimiento del grado de calor requerido.

[7] Convenimos con las demandadas, según hemos indicado al principio, en que la prueba era fuerte y convincente de que no quedó indicio alguno de café, siendo ésta una prueba circunstancial poderosa para justificar la sentencia de la corte inferior de que el incendio no destruyó ningún café; y esto resuelve los señalamientos octavo, noveno y décimo.

Tenemos ahora que considerar la apelación de las demandadas y nos referiremos primeramente al señalamiento de error número 4 que alega que el incendio no fué casual.

[8] En primer lugar, existe el hecho predominante, según lo resolvió la corte inferior y según nosotros lo confirmamos, de que la demandante o sus agentes trataron de recobrar el valor de un café que en realidad nunca se quemó. El tratar de hacer esto es uno de los indicios imaginables de fraude más poderosos, y por sí mismo indica el origen incendiario del siniestro. Las principales dudas que hemos tenido a favor de la demandante son que la corte inferior, muy erróneamente, no prestó atención en sus resoluciones a la cuestión del origen incendiario; y a que no hubo bastante prueba física de que el incendio fuese premeditado. En el caso de *J. Llamas & Co.* v. *Great American Insurance Corporation,* 33 D.P.R. 818, citado por las demandadas, la corte falló a favor de las compañías de seguros y la prueba de que el incendio fué premeditado, por haberse puesto materiales inflamables, era bastante poderosa. Por otra parte, en este caso la prueba demostró que el incendio comenzó rápida e inexplicablemente; que Lorenzo Dragoni,

el agente y mayordomo de la demandante, estaba solo en la casa, levantado y parcialmente vestido, y que aparentemente no hizo serio esfuerzo por evitar el fuego o aún por salvar los muebles. Algunos de éstos, especialmente un teléfono, según uno de los testigos, fueron vistos posteriormente en otro sitio. Otra circunstancia poderosa contra la demandante fué que en el momento del incendio la familia de Lorenzo Dragoni, que acostumbraba vivir en la casa, estaba ausente, así como una maestra que también vivía allí. La prueba no nos satisface, según lo alegan las demandadas, de que el valor de la casa y su contenido fuera grandemente exagerado. La conclusión a que llegó la corte inferior fué contraria a esto. Existen además los hechos adicionales de que la demandante alegó que se quemó todo el café y de que una investigación posterior demostró que parte de éste estaba almacenado en otro sitio. Además, hubo la declaración de un testigo, a quien la corte dió crédito en cuanto a los otros extremos de su declaración, al efecto de que un libro o varios libros de la demandante fueron alterados después del siniestro. Dadas las falsas manifestaciones de los agentes de la demandante en la silla testifical y la reclamación fraudulenta del café que nunca se quemó, las otras circunstancias del caso son tan poderosas que nos inducen a llegar a la conclusión de que el incendio no fué casual, sino que fué comenzado por un agente o por agentes de la demandante.

Antes de comenzar a discutir los otros señalamientos de error de las demandadas, es conveniente exponer algunos hechos más. En esta parte del caso, aparece que la demandante entabló demanda contra distintas compañías para recobrar $4,000 por la casa y $500 por los muebles. En dicha casa estaba almacenado el café. La demandante alegó, y la corte estuvo de acuerdo con ella, que la casa valía $4,000. La demandante alegaba que los muebles valían $1,000. Las demandadas alegaron que los muebles no va-

lían $500, que no pertenecían a la demandante, y que gran parte de los mismos fué salvada del siniestro. La corte dictó sentencia a favor de la demandante por la suma de $500 cubierta por las pólizas.

[9] El primer señalamiento de error, en efecto, ataca la acción de la corte al no resolver que la demandante no tenía derecho a recobrar porque no presentó su prueba de las pérdidas dentro de los quince días de ocurrido el incendio. La condición impuesta por la póliza era la siguiente:

"Artículo 10. Inmediatamente que se declare un siniestro que cause daños o pérdidas en los objetos asegurados por la presente póliza, el asegurado tiene obligación de participarlo a la Compañía por escrito, y de entregarle, a más tardar dentro de los quince días siguientes al del siniestro, o en cualquier otro plazo que la compañía le hubiera especialmente concedido por escrito, los documentos siguientes:

"(*a*) Un estado de las pérdidas o daños causados por el siniestro, indicando del modo más detallado y exacto que sea posible, los varios objetos destruídos o averiados y el importe de la pérdida correspondiente, teniendo en cuenta el valor de dichos objetos en el momento del siniestro, sin comprender ganancia alguna.

"(*b*) Una relación detallada de todos los demás seguros que pudieran existir sobre los mismos objetos.

"El Asegurado viene igualmente obligado, en cualquier tiempo, a procurarse a su costa y a entregar o poner de manifiesto a la Compañía todos los detalles, planos, proyectos, libros, recibos, facturas, copias o duplicados de facturas, documentos justificativos, actas y cualesquiera informes que la compañía, directamente o por mediación de sus respresentantes esté equitativamente en derecho de exigirle con referencia a la reclamación, al origen y a la causa del incendio y las circunstancias bajo las cuales las pérdidas o daños se han producido, o relacionados con la responsabilidad de la Compañía o con el importe de la indemnización debida por ésta.

"Asimismo, el asegurado viene obligado a certificar la exactitud de su reclamación y de cuantos extremos estén consignados en la misma, mediante una declaración hecha, sea bajo juramento o en cualquier otra forma legal.

"Si el Asegurado no cumpliere lo dispuesto en el presente artículo, quedará privado de todo derecho a indemnización en virtud de la presente póliza."

Como regla general, no tenemos duda de que tal condición en una póliza es obligatoria para el asegurado, y en ausencia de renuncia u otra condición similar, impedirá que el asegurado obtenga indemnización. *Quiñones* v. *"L'Union,"* 34 D.P.R. 405 y casos citados; *J. Casablanca, S. en C.* v. *The Palatine Insurance Co.,* 32 D.P.R. 678; *Missouri Pacific Railway Co.* v. *Western Union Assurance Co.,* 129 Fed. 610; *White* v. *Home Mutual Insurance Co.,* 128 Cal. 131; *Joyce on Insurance,* sección 3280.

La sección 175 de la Ley de Seguros de 1921, (Leyes de 1921, pág 649), lee como sigue:

"Sección 175.—Será ilegal toda cláusula en un contrato de seguro que impida al asegurado el derecho de reclamar en los tribunales de justicia, en cualquier momento después de ocurrido el accidente contra el cual se hizo el seguro, el importe de cualquier pérdida sufrida y que hubiera sido objeto de dicho seguro. El tribunal determinará no sólo la responsabilidad de la compañía, sino también el alcance de la pérdida."

[10] Esta disposición, según se ha resuelto, no impide que una compañía de seguros insista en que se le presente la prueba de las pérdidas. *Hicks* v. *British America Assurance Co.,* 162 N. Y. 284, 48 L.R.A. 424; *McNully* v. *Phoenix Insurance Co.,* 137 N. Y. 389; *North British & M. Insurance Co.* v. *Lucky Strike Oil Co.,* 173 Pac. 845, 22 L.R.A. 398; y *Miguel Ríos Rivera* v. *The Niagara Insurance Co.,* 33 D. P.R. 809. El Artículo 10 no es una limitación al remedio, sino al derecho a demandar.

Lo anteriormente expuesto, a nuestro entender, no ha sido negado seriamente por la demandante. La idea es que las compañías demandadas, por sus actos, han renunciado a la necesidad de que se les suministrara prueba de las pérdidas. La demandante no presentó su prueba de pérdidas a tiempo, sino que la envió al ajustador varios meses después de transcurridos los quince días fijados por dicha póliza.

No hubo ninguna dificultad respecto a las supuestas pérdidas en este caso. Fueron totales. Es cierto que dos de los agentes de las compañías fueron casi inmediatamente al sitio del siniestro, que practicaron toda clase de investigaciones, hicieron toda clase de preguntas y aún se llevaron consigo un libro o varios libros de la demandante; pero según aparece de la declaración de la propia demandante, dichos agentes le dijeron claramente que no tenían autoridad, ni se la tomarían, para arreglar la reclamación, manifestando que tal función correspondía al ajustador. Según parece, los dos agentes a que hemos hecho referencia fueron al lugar del fuego a instancias de un amigo o agente de la demandante. Dichos agentes fueron en compañía de un detective. No es posible que la mera presencia e investigación por parte de los agentes de las compañías constituya una renuncia, y que deban abstenerse, so pena de que ello equivalga a una renuncia, de hacer una investigación oportuna. Entonces el pegar fuego se haría más fácil y sencillo. En realidad de verdad, la póliza provee el consentimiento y cooperación del asegurado para suministrar los datos necesarios a los agentes de las compañías.

En su alegato, el abogado de la demandante nos llama la atención hacia lo que él caracteriza como la curiosa personalidad del llamado "ajustador." El abogado pinta a este funcionario como que es un hipócrita y de dos caras; que se presenta en la escena del suceso e investiga varios detalles sin la intervención del asegurado, adquiere toda clase de documentos y libros de él, y entonces, cuando llega el supuesto momento de hacer un arreglo o transacción, dice que no puede dar un paso más sin consultar con su compañía. Parece que el abogado desea hacerle comprender a la corte que el propósito del ajustador es engañar al asegurado para evadir el pago de las pérdidas.

El ajustador de una compañía de seguros contra incendio ha sido una personalidad bien reconocida en materia

de seguros contra incendio por más de medio siglo. El ajustador frecuentemente tiene plena facultad legal para arreglar una reclamación, pero no siempre. Al igual que otros agentes, aun cuando tenga plena facultad para hacer un arreglo, sus instrucciones o su experiencia muy bien pueden aconsejarle que someta el asunto a su principal antes de efectuar el ajuste. En esto no se diferencia en nada del abogado que hace un arreglo en corte, o un agente de negocios, u otros muchos agentes, que, teniendo autoridad legal para ello, creen impropio hacer ciertos arreglos sin obtener el consejo o consentimiento de sus principales.

En lo que al ajustador en este caso se refiere, no encontramos ningún acto de renuncia por su parte. Cuando hizo que la asegurada o su agente firmara una renuncia de derechos, tal documento no tiene nada de particular, y en el presente caso se firmó, en efecto, mucho después que había expirado el tiempo para presentar prueba de las pérdidas. Si realizó algunos actos con anterioridad al momento de firmarse dicho documento, lo que por sí solo o en conexión con los actos de otros agentes podría constituir una renuncia, es cuestión diferente. La cuestión a resolver por nosotros no es la de fraude por parte de las compañías, como sugiere la demandante, y sí una cuestión de hecho, a saber, si los actos en total de las compañías en este caso, o sus agentes, constituyen una renuncia de la necesidad fijada por la póliza de que se sometiera prueba de las pérdidas dentro de los quince días de ocurrido el siniestro.

Las compañías demandadas alegan que cuando el asegurado se funda en la renuncia por parte de las compañías de la necesidad de presentar prueba de las pérdidas, el asegurado debe alegar tal renuncia al radicar demanda en cobro de pólizas. Quizás si la corte inferior hubiere fallado el caso a favor de las compañías demandadas por este motivo, y la demandante no se hubiera propuesto enmendar su demanda, probablemente habríamos sostenido la senten-

cia de la corte inferior. Donde, como ocurre aquí, la contienda librada en la corte inferior giró aparentemente sobre la cuestión de renuncia por los actos de los distintos agentes de las compañías, debemos estar dispuestos a considerar la demanda como si se hubiera enmendado para cubrir la alegada renuncia por parte de las demandadas, de presentar la demandante .prueba sobre las pérdidas, o como una incongruencia insubstancial. *El Pueblo* v. *Valdés,* 31 D.P.R. 223.

[12] El peso de la prueba recae sobre la demandante para demostrar que las compañías renunciaron a cualquiera estipulación de la póliza, y vemos que éstas no hicieron tal renuncia, bien con respecto a los agentes generales, o en lo que respecta a los actos del ajustador, considerados separadamente, o con respecto a los actos de todos ellos, considerados conjuntamente. El hecho de que el ajustador, dentro de algunos días de ocurrido el incendio, hiciera numerosas preguntas y se llevara libros pertenecientes a la asegurada no constituye una renuncia.

Las compañías alegaron otros errores, como por ejemplo, que la casa y su contenido nunca tuvieron el valor por el cual fueron asegurados. Sin embargo, como hemos llegado a la conclusión de que el siniestro fué de origen incendiario, y que las compañías no renunciaron a la condición de la póliza que exige que la prueba de pérdidas fuera presentada dentro de los quince días, lo cual no se hizo, debe revocarse la sentencia de la Corte de Distrito de Ponce.

Por tanto, debe dictarse sentencias *confirmando la sentencia* de la corte de distrito en lo que concierne a haberse negado a conceder las reclamaciones presentadas por el café incendiado, *y revocando la sentencia* en lo que se refiere a haber concedido la reclamación de la demandante por la casa y su contenido.

El Juez Presidente Sr. del Toro firmó conforme con la sentencia.

OPINIÓN CONCURRENTE DEL JUEZ PRESIDENTE SR. DEL TORO.

Estoy conforme con las sentencias dictadas porque se probó el incendio intencional por parte del asegurado. No creo, por tanto, necesario entrar en el examen de los actos del ajustador y prefiero abstenerme de mostrar mi conformidad con la opinión de la mayoría sobre este extremo, ya que tengo dudas de los principios que establece a la luz de las circunstancias que concurren en el caso.